## BULKLEY *a.* BULKLEY.

*Supreme Court, Seventh District ; Special Term, January,* 1858.

### SUMMONS.—IRREGULAR OR FRAUDULENT SERVICE.

When the summons in an action is not legally served, the court have no jurisdiction of the defendant, and in such case all proceedings based on the pretended service are void.

The object of the summons is to give the defendant an authentic and fair notice that an action has been commenced, and to notify him of the time allowed to

prepare and interpose a defence; and when so notified, he is entitled, in cases that may require it, to apply to the court for any additional time that may be necessary for that purpose; and any trick or device that deprives the defendant of these just and reasonable provisions, is a fraud upon the spirit and intent of the statute, and on the rights of the party.

Putting the defendant in the unknown possession of a summons, disguised or enveloped, so as to conceal from him the knowledge which it was the intent of the law should be communicated, is not a good service; and the subsequent discovery by the defendant, upon whom such an attempted service is made, of the contents of the summons, is not to be deemed a good service, if the defendant is beyond the limits of the State when he makes such discovery.

The plaintiff accompanied the defendant to the steamer on which she was embarking for California, and there, at the last moment before the sailing of the vessel, delivered, or caused to be delivered, to her, a sealed box, which he informed her contained a present for a third person in California, and a note for herself, but which, in reality, as she found by opening it upon the voyage, contained the summons in the action. Upon the usual affidavit of service of the summons, and no appearance by the defendant, the plaintiff proceeded to judgment:—

*Held*, that the service was fraudulent and void, and that the summons, proceedings, and judgment must be set aside on defendant's motion.

The neglect of the defendant to make such motion immediately on her return to this State, could not be deemed to give the court jurisdiction.

Motion to set aside judgment, and all proceedings in an action for divorce, on the ground of an irregular or fraudulent service of the summons, by which the action was commenced.

The action was for a divorce *a vinculo matrimonii*. The venue was laid in Saratoga county, and the defendant not having appeared in the action, judgment for the plaintiff was entered, on the report of the referee, in January, 1857.

The facts appearing by the motion papers were as follows:—
The plaintiff was an attorney and counsellor at law, living and keeping his office in the city of New York; the defendant was his wife. The parties were married May 17, 1852, and had lived and cohabited together, as man and wife, from the time of their marriage down to October 6, 1856. They had one child, a son, about four years old.

On October 6, 1856, defendant, with the plaintiff's consent, left the city of New York, on board the steamship Illinois, to pay a visit to her mother, then living in Sacramento, California. The plaintiff accompanied her to the steamship, and spent the last hour before its departure in apparently friendly and affectionate conversation with her on board. In that conversation

the plaintiff expressed his gratification that a good opportunity had offered for her to visit her mother. When the order was given on board for "all persons not bound to California to go ashore," one of the witnesses saw the plaintiff, at the moment of bidding her farewell, embrace and kiss his wife, and then hand her a package. This package was a small tin box, closed, covered with paper, and the paper sealed. At the time of handing this package to the defendant, the plaintiff informed her that the box contained a *present* for her mother, and also a note for herself: he requested her to be careful of the *present*, and to deliver it safely to her mother. After the defendant had passed Sandy Hook, and was out at sea, her curiosity induced her to unseal and open the package which her husband had so delivered to her. Upon opening the tin box, she discovered therein a summons directed to herself, as defendant, and in which her husband was plaintiff, filled out in the handwriting of her husband, and signed by himself as his own attorney, containing the usual notice to her that an action was thereby commenced in the Supreme Court; and that the complaint would be filed in the clerk's office in Saratoga county; and that if she failed to put in an answer in twenty days, the plaintiff would apply to the court for the relief demanded in the complaint. The box also contained a letter to her, informing her that the action was to obtain a divorce, and that he, the plaintiff, had witnesses by whom he could prove the necessary facts. The box contained no present to her mother, nor any other thing but the summons and letter. No part of these statements was contradicted by the opposing papers of the plaintiff, except that the plaintiff denied "kissing his wife" at the time of separation; and both he and his clerk state that the defendant received the package from the hands of the clerk, and not directly from the hands of the plaintiff. But by another witness the defendant was corroborated in her statement as to the plaintiff's delivering to her the box himself. At the time of her opening the box, she was beyond the limits of the territory of this State; she then possessed no power to return. When she arrived at Aspinwall (the first place of the vessel's stopping), she made an effort to return, but was then in a condition of body and mind that made her friends remonstrate with her against it. She could find no vessel that would return her to New York within the

twenty days. She had not with her the necessary pecuniary means to obtain her passage back. She had her tickets taken through to California; her baggage was checked through, and. could not be obtained for her there, and she could find no friend' or acquaintance that was returning to New York. She was per-- suaded by her friends to go forward. She went to California, and returned to New York about the middle of January, 1857.. She did not see her husband until the decree of divorce had been obtained. At their first interview he gave her a copy of it. From January to May the defendant remained in New York, negotiating with the plaintiff in relation to her condition, but principally in the attempt to see her child—during all which time, however, she was not permitted by him to see it. This statement was not contradicted by him. She also alleged that the plaintiff threatened her, in case she should attempt to set. aside the decree, that he had witnesses at his control by whom he could blast her fame; and that he made various other threats, of which she stood in fear. Also, that he made her two propositions : one was, if she would keep secret what had transpired about the decree, and would raise him $5000, he would give her the custody of her child; the other, that if she would raise for him $1500, he would get from the clerk of Saratoga county the record of the divorce, and thus obliterate all the evidence of its existence. The first of these propositions the plaintiff denied, the last one he did not.

The defendant finally returned to California for aid, and obtained there the necessary corroborating affidavits for this motion. She made an unqualified denial of the charges set forth in the complaint, and this denial was also corroborated.

Various immaterial affidavits were also read on the motion; but the statement above contains all that necessarily relates to the question to be decided.

*George C. Bellows,* for the motion.

*Plaintiff in person* and *A. Pond,* opposed.

POTTER, J.—If the summons in this case was not legally served,. the court have never had jurisdiction of the party defendant; and in such case all proceedings based upon the pretended service is void, and the judgment or decree without force or effect..

In order to determine the legality of this service, let us inquire what is the obvious policy and object of the statute that requires the commencement of an action to be by the service of a summons; and also what other rights are allowed to a party, when a summons has been duly and fairly served? The summons is a proceeding which both gives, and limits the defendant to, a period of time in which to appear in the action to defend it. Its first undoubted office is to give to the defendant a certain authentic and fair notice that an action has been commenced; and next, to notify him of that reasonable time which the statute has afforded as an opportunity for preparation of his defence, or, in other words, a time to advise and consult with counsel and friends as to the nature, propriety, and character of the defence to be interposed, if a defence is intended. When a defendant, by reason of such a notice, has been fairly brought into court, he is entitled, by virtue of other provisions of law (in cases that may require it), to apply to the court for any additional time that may be necessary to make preparation for the defence. These are the commonest rights which the spirit of the statute, as well as the fair demands of justice, allows to every citizen, in order to place him in condition to have a fair and impartial trial; and, if desired, a trial by the jury of the country. Any trick or device which deprives the defendant of these just and reasonable provisions, is a fraud upon the spirit and intent of the statute, and upon the rights of the party. In cases where a wife is a party to an action for divorce against her husband, she is permitted, by other equally just and wise provisions of law, a time and opportunity to apply to the court for an allowance (in discretion) for alimony, to be furnished and supplied by her husband during the pendency of the suit, and also that she be in like manner supplied with all reasonable and necessary means to employ counsel, and to defray all other expenses of defending her just rights, her character, and her fame.

What one of these ordinary legal rights, can it be said, was allowed to this defendant in this case? What one of those rights could she have obtained by an effort that she could have made, after the service or pretended service of this summons? Not one. Did the manner of putting this summons into her possession give her notice of the commencement of an action? Was she thereby furnished with time and opportunity to pre-

pare her defence? Was she put in condition to advise with counsel to apply to the court for either additional time or pecuniary relief? On the contrary, I think that human ingenuity may be challenged to present the parallel of this case, where any one by design and contrivance, by the aid of circumstances and occasion, and by the pretence of employing the process of the court and the forms of law, has been so effectually disfranchised, outlawed, and cut off from all relief, as that which this case presents, if this judgment is permitted to stand.

After the representations of the plaintiff to her as to the contents of this box, he knew that if she did not even wait her arrival in California to unseal it, she at least would be beyond the power to return in time to seek and obtain those rights which the law could furnish. For all the purposes of seeking the benefit of those rights, which the law intends to secure to every citizen, he might as well have thrust her into a prison, and have been himself her custodian, safely keeping her from intercourse with any living being; and yet he seriously asks this court to hold, that even if the first service, by giving her the box, should be held irregular, that from the time she opened the box and read the contents of the summons, it should be regarded as good service. It is a sufficient answer to this proposition to say, that when she first read this summons, she was beyond the jurisdiction of this State, upon the broad expanse of ocean, and service there was no service at all in law. Nor is the charge of laches on her part (which is raised by the plaintiff) to be used against her. If the court had no jurisdiction by the service of the summons, they could not acquire it by laches. Courts never acquire jurisdiction by laches.

The plaintiff is an attorney and counsellor at law, and cannot be deemed ignorant of what constitutes good service of a summons. He does not pretend to be ignorant of the manner in which it is claimed that the service was effected. He stood by and saw the thing done, and knew the manner of doing it; both he and his clerk so swear.

Two of the affidavits state that it was done by putting the summons in a closed tin box; that box enveloped with paper and sealed; that the package so sealed was handed to the defendant at the moment of the leaving of the steamship, at its departure for California, for which place the defendant had

taken passage by the act, procurement, and consent of the plaintiff; that at the time of handing her such package she was requested to deliver it to her mother in California, for whom (she was informed) it contained a present. Neither the plaintiff nor his clerk contradicted this statement. The plaintiff had lived and cohabited with the defendant as his wife, down to the very day of her departure; and he had never to that time communicated to her a doubt or suspicion of her infidelity, or informed her of any intent to obtain a legal separation.

It is entirely immaterial, then, whether this package was received by the defendant from the hands of her husband, or from the hands of his clerk, so far as that act imparted to her any knowledge of what was intended to be effected by it. The plaintiff being an attorney at law, doubtless has read the 133d section of the Code, which, in effect, prohibits a party from serving his own summons, and it is not, therefore, entirely improbable that he took his trusty clerk along to make the motions, and perhaps for the purpose of actually passing the box into the defendant's hands; and as this act was performed while the plaintiff was affecting the most tender and affectionate interest at the separation between him and his wife, and connecting the act with the plaintiff's conversation in regard to it, and with the undisputed assurance on his part to her that the package contained a kind memento to her mother, as well as a note to herself, the other persons who saw and heard all this might well be mistaken as to whose hand, whether that of his clerk or his own, actually passed this box to the defendant. Divesting this act, if we may—if we can—of all fraudulent intent, or fraudulent representations, taking the view we have of the office of a summons, and the rights of the parties afterwards, can this court, sitting here to dispense equal justice, hold that the unknown possession of a summons thus disguised—thus enveloped—thus concealing from the party the very knowledge which it was the intent of the law should be communicated— constitutes it a good service within the spirit of the statute? Such a holding would not only bring a reproach upon the administration of justice, but would be an impeachment of the universal dictates of common sense. It requires no other knowledge of the law, than to know that its basis is reason and justice, to be able to determine the right of this question; and the at-

tempt to dignify this act, by claiming it to be a legal service of the summons, is little short of an insult to the intelligence of the court.

This motion might be decided upon the views above expressed, without reference to any other of the moral aspects which the case presents. But the court would feel that they fell short of the discharge of their whole duty, if they failed to take judicial notice of the fact, that the plaintiff is an attorney and counsellor of this court, and therefore one of its officers; that by virtue of the rights and privileges which this position confers upon him, he has committed a gross abuse of the process and authority of the court. He has used the privileges which his license to practice confers, in order to acomplish his own private objects and purposes. By a secret and cunningly devised stratagem, he has decoyed a defenceless woman into a condition of entire helplessness, and while so ensnared, has perverted the use of the process of the court to the commission of a most unhallowed fraud upon her rights, and under circumstances of unparalleled heartlessness and cruelty. Nor is the moral aspect of the case relieved by the fact, that the victim of this injustice was the wife of the plaintiff, to whom, at the solemn altar, he had pledged his holiest vows to love, to cherish, and to protect, and that she was also the mother of his offspring. It is sufficient for the court to know that the act which he calls the service of a summons, and upon which he based his decree, was in no sense a legal service, but was a fraud imposed by him, not only upon the defendant, but also upon the court, and deliberately entered into its solemn records. If this pretended service was made in the manner detailed in the affidavits, his clerk, by whom it was effected, in swearing to due service, was guilty of most deliberate falsehood, if not of legal perjury; and the plaintiff, who doubtless planned the scheme, and who, knowing its iniquity, availed himself of its uses, is responsible to the charge of moral, if not legal, subornation of perjury. To tolerate, for one moment, an act so flagrant and wicked, to be consummated by one over whom the court can exercise its control, to pass unrebuked, does not comport with the idea of a pure and honest administration of justice. Such a reproach, while in the exercise of the power with which I have been invested, it shall not suffer at my hands. The affidavit of the service of the sum-

mons by the clerk of the plaintiff, was made in the city and county of New York. To a grand jury of that county I commit the consideration of that paper. The affidavit of the plaintiff, upon which he obtained the order of reference, in which he coolly states, "that no copy of an answer to the complaint in this action has been received, nor has the defendant entered any appearance in the action, nor has she, or any one in her behalf, demanded a copy of the complaint, and deponent was personally present and saw the summons herein served on defendant," was taken before the clerk of Montgomery county, to whose grand jury I recommend the proper attention. To the general term of the Supreme Court, in whose immediate district this attorney and counsellor conducts his chief practice, I call attention to this officer of the court.

The service of the summons, and all subsequent proceedings in this action, including the judgment and decree of divorce, is set aside with costs.