(112 App. Div. 503)

### In re McGARREN'S ESTATE.

(Supreme Court, Appellate Division, First Department. April 20, 1906.)

1. JUDGMENT—COLLATERAL ATTACK—WANT OF JURISDICTION—EXTRINSIC EVIDENCE.

On a collateral attack on a judgment annulling a marriage, on the ground that summons was not served on defendant, it appeared, from the affidavit of the process server in such action, that he served defendant at a certain time and place by delivering a copy of the summons to her, and that he testified in such action in corroboration of his affidavit. A witness testified that defendant in the action to annul the marriage told him that she had been served with a summons and complaint; that the officer had handed her a summons and she had thrown it on the sidewalk. Defendant herself testified that the officer, at the time and place he claimed to have served the summons, attempted to hand her an envelope, but that she struck him, and that it fell to the ground and she left it there; nothing having been said as to the contents. *Held*, that in view of such evidence, and in view of the fact that many important statements in her affidavit were disproved by the affidavits of others, the attack on the judgment was insufficient.

2. SAME.

On a petition for revocation of letters of administration and for the appointment of petitioner as administratrix, on the ground that she was the widow of deceased, it appearing that a judgment had been rendered annulling the marriage, the surrogate had jurisdiction to consider whether, in entering the judgment annulling the marriage, the Supreme Court had acquired jurisdiction of the person of the petitioner for revocation by sufficient service of process, notwithstanding that in the action to annul the marriage witnesses were called for plaintiff and examined on the question of service; it appearing that the trial in the action to annul the marriage was a trial on default, so that the fact as to service of process was not "litigated."

Appeal from Surrogate's Court, New York County.

Judicial proceedings on the settlement of the estate of Alexander McGarren, otherwise known as Alexander McGoughran, deceased. From an order of the Surrogate's Court, denying a motion by Hester McGarren for the revocation of letters of administration granted to Henry McGoughran, she appeals. Affirmed.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

Edward W. S. Johnston and Daniel W. Blumenthal (Maurice Blumenthal, on the brief), for appellant.

Daniel D. Sherman, for respondent.

CLARKE, J. This is an appeal from an order of the Surrogate's Court of the county of New York denying the petition of Hester McGarren, asking for the revocation of letters of administration theretofore granted to Henry McGoughran on the estate of Alexander McGarren, or McGoughran, and the appointment of said petitioner as administratrix of said estate. The petitioner alleges in the petition that said Alexander McGarren departed this life on June 25, 1905, being at the time of his death a resident of the city and county of New York, and that she is the widow of the said Alexander McGarren; that he left, him surviving, only his widow and eight cousins; that he left a large estate of personal property and two pieces of real property; that

a petition, verified by the respondent Henry McGoughran, had been filed on June 29, 1905, praying that letters of administration be issued to him, and a decree of the Surrogate's Court had been entered appointing the said respondent such administrator; that said petition did not refer to this petitioner at all; that such respondent was incompetent and disqualified to act as such administrator, and that petitioner had a prior right to be appointed administratrix of the estate; that neither she nor anybody representing her had made any objection to the appointment of the said Henry McGoughran as such administrator, for the reason that she had no notice whatever of the pendency of said application until after the issuance of such letters of administration, and no citation had been issued to her. Answering said petition, the administrator alleged that the petitioner was not the widow of the decedent; that she had been married to the decedent on October 1, 1898, but respondent submitted a certified copy of the judgment roll in the suit of Alexander McGarren v. Hester McGarren in the Supreme Court in the county of New York, which judgment annulled the marriage of the petitioner with the deceased on April 1, 1902, and presented the affidavits of nine persons tending to show that the petitioner, appellant, had full knowledge of the proceedings in the annulment suit from and after the service of the summons therein upon her; that she knew of the judgment in 1902, nearly three years prior to the death of the deceased; that she took no steps to set said judgment aside prior to the death of the decedent; and that she had full knowledge of the respondent's application for letters of administration, approved of his application, and conceded his right until some time after the entry of the decree granting administration to the respondent.

The question really involved here is the validity of the judgment annulling the marriage. If that is a good judgment, concededly the appellant has no right of administration. The validity of said judgment is attacked upon the ground that the court in which it was rendered did not acquire jurisdiction of the defendant, in that the summons therein was not served upon her. Incidentally the question is raised whether the surrogate has power to pass upon the question of jurisdiction, because, while in his order no such determination is made, in his opinion on the motion the learned surrogate said: ·

"Upon these facts the inquiry that her counsel asks me to make is, not as to whether any service of summons was made, but as to whether, upon the facts, what was done in the attempt to serve her amounted to a regular and sufficient compliance with the requirements of the law as to the service of a summons in the Supreme Court. This I decline to do, upon the ground that I am without jurisdiction."

Section 1754 of the Code of Civil Procedure provides that:

"A final judgment, annulling a marriage, rendered during the lifetime of both the parties, is conclusive evidence of the invalidity of the marriage in· every court, of record, or not of record, in any action or special proceeding, civil or criminal."

The judgment entered April, 1902, was rendered during the lifetime of the parties. The marriage upon which the petitioner relies to establish her claim is identified and conceded to be the marriage annulled by said judgment. The entire record of that judgment is before us,

and was before the surrogate, and shows that the Supreme Court it-self inquired into the facts necessary to give it jurisdiction, and determined for itself that it had acquired jurisdiction to render its judgment; that is, that its process was regular in form and was duly served on the defendant. In the decision filed in said suit it is stated:

"And due proof having been made of personal service of the summons upon the defendant in this action."

In the judgment and decree it is stated:

"Now, therefore, on reading and filing the summons and complaint in this action, and proof of personal service of the summons herein on the defendant herein within the state of New York."

The affidavit of service of Joseph N. Starin, verified October 10, 1901, a part of the judgment roll, after stating the facts showing his knowledge and acquaintance with the defendant, proceeds:

"On the 5th day of June, 1901, at the northwest corner of Twenty-First street and Ninth avenue, in the city of New York, at 3:30 p. m. on that day, he served the annexed summons on the said Hester McGarren by delivering a copy of the same to her and leaving the same with her. Deponent further says that, when he served the said summons upon the said Hester McGarren as aforesaid, he asked her if she was Mrs. McGarren, and she said, 'Yes;' that deponent thereupon said to her, 'I have a paper to summon you,' and handed a copy of annexed summons to her; that she thereupon said, 'I won't take a summons; I don't want your summons paper,' and refused to take it, and thrust it away, and allowed it to fall to the sidewalk; and that deponent thereupon left the said summons by her and departed. Deponent further says that the said copy of the annexed summons so delivered to said Hester McGarren by him as aforesaid had the words 'Action to Annul a Marriage' legibly written upon the face thereof."

Starin was examined in open court before the learned judge who granted the decree, on February 26, 1902, and testified that he served the summons in the action on the defendant June 5, 1901, at the northwest corner of Twenty-First street and Ninth avenue, in this city, at about 3:30 o'clock in the afternoon; that he offered a copy of the summons to her; that he told her it was a summons; that he left the copy with her; and that it had the words "Action to Annul a Marriage" written plainly upon the paper.

Thomas Dusenberry testified that he was special officer of the Equitable Building Safe Deposit Vaults; that he had known the defendant for 12 years; and that at the Equitable Building, outside of the vaults, he had an interview with her on or about June 25, 1901. The testimony proceeds:

"Q. Was anything said at that interview concerning this suit brought by Alexander McGarren to annul his marriage with Hester McGarren? A. Yes, she told me— Q. What was said—what did she say to you about this suit? A. She said that she had been served with a summons and complaint. Q. Was anything else said? A. She said that the officer had handed a summons and complaint to her, and she threw it down on the sidewalk. He picked it up again and placed it on her arm."

The evidence, therefore, is amply sufficient to sustain the statement of the decision and the decree as to the fact of personal service of the summons.

In Ferguson v. Crawford, on the second appeal (86 N. Y. 609), Judge Rapallo said:

98 N.Y.S.—27

"The judgment in the McFarquhar Case was regular on its face, and every intendment should be in favor of its validity; and although we have held that the defendant therein was at liberty to show, if he could, that the court never acquired jurisdiction of his person, yet the burden of establishing that fact was upon him, and it should be established in the most satisfactory manner to deprive the judgment of its effect."

What does the petitioner offer in this collateral attack upon a judgment most seriously affecting her status, and of which concededly she had knowledge for three years prior to decedent's death without any step whatever being taken by her to test its validity? Her own affidavit alone, in which she says:

"I remember the interview with the man who it was claimed was Starin, at which he claimed to have served me with a summons in the said annulment action. The interview occurred on June 5, 1901, on the public highway in this city in the neighborhood of Twenty-First street and Ninth avenue, in the afternoon of that day [the very time and place testified to by Starin]. "He * * * asked me whether my name was McGarren, and said, in effect, that I should take from him a paper. In his hand was an envelope. * * * I struck Starin, and I think the envelope fell to the ground. Then Starin went away. The envelope was not taken by me, and was never in my actual possession for a moment. Nothing was said by Starin as to the contents of the envelope. He did not at any time say that he had a summons for me."

—And she denied the conversation with Dusenberry. There is here no suggestion of fraud, as was the case in Bulkley v. Bulkley, 6 Abb. Prac. 307, cited by appellant. Assuming the facts stated by petitioner to be true, it was simply a defective service, and not an entire want of service. But, as appellant's affidavit corroborates the process server in important details, as his original affidavit fully sets forth the occurrence, as where she denies his statements she is uncorroborated, and as many important statements in her affidavit as to other facts are completely disproved by the affidavits of others, we find that she has not sustained the burden thrown upon her, and think that her collateral attack upon the judgment has failed, and that the surrogate was warranted in making the order appealed from.

We might well stop here; but, inasmuch as the learned surrogate has expressed a conviction as to his want of jurisdiction in the premises, we are of the opinion that he had power to consider whether, in entering the judgment annulling the marriage, the Supreme Court had acquired jurisdiction of the person of the defendant. In Kerr v. Kerr, 41 N. Y. 272, there was a proceeding before the surrogate to revoke letters of administration. An Indiana judgment of divorce was submitted, and extrinsic evidence of want of jurisdiction received. Judge Grover said:

"The counsel for the appellant insists that, it having appeared from the evidence that, to determine which of the parties was the wife and widow of the intestate, it was necessary to inquire into and pass upon the validity of a judgment divorcing the intestate from the respondent, rendered by a circuit court of the state of Indiana, it was not competent for the surrogate to decide that question, and that he should have dismissed the proceeding. In this position I do not concur. The statute expressly empowers the surrogate to determine the truth or falsity of the allegation upon which the letters were issued. This includes the power to decide every incidental question necessary for that purpose, whether such question be one of fact or law."

And the surrogate was sustained in revoking her letters upon the ground of the invalidity of the Indiana divorce established by extrinsic evidence.

In the Matter of Kimball, 155 N. Y. 62, 49 N. E. 331, there was an appeal from an order of the Appellate Division affirming a decree of the surrogate denying a petition for the removal of administrators and for the appointment of petitioner. The proceeding turned upon the validity of a North Dakota divorce. The surrogate determined the judgment invalid, and was affirmed; Judge Haight saying:

"It is equally well settled that the judgment of a court of a sister state has no binding effect in this state, unless the court had jurisdiction of the subject-matter and the person of the parties, and that want of jurisdiction may always be interposed against a judgment, where it is sought to be enforced, or where any benefit is claimed for or under it. * * * Such a judgment is void and of no force or effect in this state" citing, among other authorities, Kerr v. Kerr.

It is thus directly settled by the Court of Appeals that upon such a proceeding as in the case at bar the surrogate has the power to take extrinsic evidence as to the jurisdiction of the court of a sister state, and, finding said court had not acquired jurisdiction, to treat the judgment so obtained as a nullity.

But the judgment here is a domestic judgment. In the leading case of Ferguson v. Crawford, 70 N. Y. 253, 26 Am. Rep. 589, Judge Rapallo examined with characteristic care and ability the whole question of the force and effect of judgments. After stating the then well-established rule in regard to judgments of sister states, that the question of jurisdiction may be inquired into, and a want of jurisdiction over the person shown by evidence, he says:

"When we consider the effect of these authorities, it is difficult to find any solid grounds upon which to rest a distinction between domestic judgments and judgments of sister states in regard to this question. * * * In holding, therefore, that a defense that the party was not served and did not appear, although the record stated that he did, was good, our courts must have held that such is the law of this state and the common law, and consequently that, in the absence of proof of any special law to the contrary in the state where the judgment was rendered, it must be presumed to be also the law of that state. The judgments of our courts can stand on no other logical basis."

In O'Donoghue v. Boies, 159 N. Y. 87, 53 N. E. 537, Judge O'Brien said:

"In case of judgments recovered in the courts of other states, which are to be given full faith and credit here under the federal Constitution, the record may be impeached for want of jurisdiction, even by extrinsic evidence; and the same is true with respect to domestic judgments. * * * These propositions have been settled in this court once for all in the case of Ferguson v. Crawford, 70 N. Y. 253, 26 Am. Rep. 589. In the opinion by Judge Rapallo, which covers the whole field of discussion, the positions stated are sustained by weight of argument and a wealth of illustration which leaves nothing further to be said on the subject."

Numerous cases are cited, following and approving Ferguson v. Crawford. Therefore it seems clear that the surrogate has the same power to pass upon the question of whether the court had jurisdiction in regard to domestic judgments that the Court of Appeals has directly decided that he has in regard to the judgments of sister states.

There remains one further consideration. As stated in O'Donoghue v. Boies:

"There is but one solitary exception to this rule, and that is in a case where jurisdiction depends on a fact that is litigated in a suit, and is adjudged in favor of the party who avers jurisdiction. There the question of jurisdiction is judicially decided, and the judgment record is conclusive on that question until set aside or reversed by a direct proceeding. Ferguson v. Crawford, 70 N. Y. 265, 26 Am. Rep. 589."

The record in the annulment suit shows that witnesses were called for the plaintiff and examined upon the question of the service of the summons. I do not think that fact brings the case within the exception. It was a trial on default. There was no appearance, no answer, no witnesses for the defense, and no cross-examination. I do not think the fact was "litigated" within the meaning of the rule. If so, it would have been a "litigated fact" upon the affidavit of service alone, and hence the question could never arise in a collateral proceeding.

It follows that the order appealed from should be affirmed, with costs. All concur.