[S. F. No. 6750.    Department One.—February 28, 1916.]

MARYON BRUGUIERE, Appellant, v. PEDER S. BRU-GUIERE, Respondent.

DIVORCE—RESIDENCE NOT BONA FIDE—SERVICE BY PUBLICATION—EFFECT OF DECREE IN FOREIGN STATE.—Where one spouse goes to a state other than that of the matrimonial domicile and there obtains a divorce under a residence simulated for that purpose and not in good faith, the judgment is not binding upon the courts of other states of the Union, and upon proof of the fraudulent residence

and of the fact that the divorce is obtained by substituted service only, it may be held void in any other state than that in which it was rendered.

ID.—VALIDITY IN STATE WHERE GRANTED.—Whether a divorce granted under such circumstances would be held valid in the state in which it was rendered is a question depending on the law of that state.

ID. — ESTOPPEL BY REMARRIAGE TO ATTACK DECREE. — A party, against whom a divorce has been obtained in a state not the residence of the parties, by the plaintiff upon service by publication of summons, and upon a residence not established in good faith, is estopped to claim marital rights in the courts of the state of the matrimonial domicile against the party obtaining such divorce, by the fact of having married another person after the divorce.

ID.—ESTOPPEL BY REMARRIAGE TO ATTACK DIVORCE.—A remarriage estops the party entering into it from denying the validity of the previous divorce.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John J. Van Nostrand, Judge.

The facts are stated in the opinion of the court.

Black & Clark, and Morrison, Dunne & Brobeck, for Appellant.

A. J. Treat, and R. P. Henshall, for Respondent.

SHAW, J.—The plaintiff began this action against the defendant for permanent support and maintenance. The court below sustained a demurrer to her complaint and thereupon gave judgment for the defendant from which plaintiff appeals.

The plaintiff and defendant intermarried in Reno, Nevada, on December 20, 1902. They were both residents of San Francisco at that time and had gone to Nevada solely for the purpose of having such marriage ceremony performed. They immediately returned to San Francisco, where they lived together until July 24, 1904. In the meantime the child Peder S. Bruguiere, Jr., was born to them. On the day last stated the plaintiff left the residence of the defendant and has ever since remained separate and apart from him. According to the allegations of the complaint, she was compelled to leave him by his extreme cruelty toward her. In

February, 1905, the defendant went to Nevada for the pur-
pose of establishing a residence there for a sufficient length
of time to enable him to obtain a divorce from the plaintiff
in the courts of Nevada. He never in good faith resided
in that state, but remained there only for the purpose of
acquiring a pretended residence for the purpose of maintain-
ing such action for divorce. His real residence during the
entire period was in San Francisco, California. On June
28, 1906, under said fraudulent claim of residence in Nevada,
the defendant obtained in said state a decree of divorce from
the plaintiff. This decree was based on constructive service
upon the plaintiff. She received no actual notice of the
proceedings and did not appear in the action. The ground
of the divorce was the alleged desertion of the defendant by
the plaintiff, which, it is alleged, was not true. The custody of
the child aforesaid was given by the said decree to the plain-
tiff herein. Immediately thereafter the defendant returned
to San Francisco, again married, and has there remained
continuously ever since. The plaintiff never resided in the
state of Nevada. The plaintiff, learning of the divorce de-
cree and of defendant's subsequent marriage, and supposing
that she had been legally divorced by the Nevada decree,
and being ignorant of the law on the subject, entered into
a marriage with Stewart Denning in July, 1907, said mar-
riage taking place in New Jersey. She continued to live
with Denning as his wife thereafter until the year 1910,
when she learned for the first time that the Nevada divorce
was invalid, because of the lack of a *bona fide* residence in
Nevada on the part of the husband. Thereupon she obtained
in the state of New York, where she then resided with Den-
ning, a decree declaring her marriage with Denning annulled
on the ground that she had not been lawfully divorced from
Bruguiere. This decree was entered in July, 1910. There-
after the plaintiff began this action to obtain maintenance and
support for herself and child, claiming to be the wife of the
defendant, notwithstanding the said Nevada decree of di-
vorce. All these facts are admitted by the demurrer, for
the purposes of the case.

The subject of the effect of a decree of divorce in a state
other than that of the matrimonial domicile of the spouses
was elaborately discussed by the supreme court of the
United States in *Haddock* v. *Haddock*, 201 U. S. 562, [5 Ann.

Cas. 1, 50 L. Ed. 867, 26 Sup. Ct. Rep. 525]. The question was considered with reference to the effect of the full faith and credit clause of the constitution of the United States. In that case the parties had been married and were domiciled in the state of New York in 1868. The husband, without cause, abandoned the wife and the matrimonial domicile and established a *bona fide* residence in Connecticut. Thereafter, in the courts of Connecticut, he obtained a decree of divorce from his wife upon constructive service only. Many years afterward the wife, who had remained in New York, began an action in that state to obtain a divorce from the husband and obtained personal service upon him in the action. He appeared and set up the Connecticut decree, in defense, as an adjudication that the marriage had been previously dissolved. The supreme court of the United States held that, although the Connecticut decree was good in Connecticut, it was without binding force in the state of New York, that it rested with the state of New York to determine what force and effect should be given to it in that state, and that the supreme court of the United States would not overrule the action of the New York courts in refusing to give credit to the Connecticut decree as a bar to the action of the wife.

It is a well-established proposition that where one spouse goes to a state other than that of the matrimonial domicile and there obtains a divorce under a residence simulated for that purpose and not in good faith, the judgment is not binding upon the courts of other states of the Union, and upon proof of the fraudulent residence and of the fact that the divorce is obtained by substituted service only, it may be held void in any other state than that in which it was rendered. (*Estate of James,* 99 Cal. 374, 377, [37 Am. St. Rep. 60, 33 Pac. 1122].) Whether it would be held valid in the state in which it was rendered is a question depending upon the policy and law of that state. The decision in *Haddock* v. *Haddock,* 201 U. S. 562, [5 Ann. Cas. 1, 50 L. Ed. 867, 26 Sup. Ct. Rep. 525], declares that a husband who, without cause, abandons his wife and takes up his residence in another state than that of their residence, thereby changes the matrimonial domicile to the state of his new residence, so that a divorce granted in that state on his complaint and upon constructive service only may be valid in that state, as an adjudication of the *res,*

the *res* being the marriage relation, but that he does not thereby carry the entire relation to that state so as to make the adjudication binding upon all the states as a judgment *in rem,* and that, notwithstanding the divorce in Connecticut, the courts of New York could proceed to adjudge another divorce and determine therein the property rights of the parties by a decree which could be enforced in New York with respect to parties and property situated therein. It would follow, of course, that if there was personal service in the action in New York, such decree would be binding everywhere, except, perhaps, in the state of Connecticut, where the previous decree had determined locally the rights of the parties. Upon the principles thus established, it seems clear that the decree obtained by the husband in Nevada is not binding upon the courts of California, even if his residence there was *bona fide.*

So far the facts stated by the plaintiff appear to establish a case in her favor. Notwithstanding that decree, if nothing more appeared, she would have the right to be considered here as the lawful wife of Bruguiere.

The case presented, however, does not depend wholly upon the action or policy of the state of California with reference to decrees of divorce given in other states to citizens and residents of California. The wife herself, when informed of the Nevada decree, acquiesced therein and proceeded to act thereon by herself entering into another marriage contract and living with the new husband for several years in accordance therewith. The vital question in this case is whether she is estopped by her conduct from now questioning the validity of the Nevada decree; whether she has not, by her conduct, accepted it as a satisfactory solution of the controversies between herself and her husband, Bruguiere, and thereby ratified and affirmed the irregularities upon which the decree was obtained, and waived all right to attack it. She alleges that she was ignorant of the law governing such matters. But she does not allege that she was not aware of the decree purporting to dissolve the marriage relation and of the fact that after a divorce she was free to contract another marriage. She admits and declares that she was. The invalidity of the Nevada decree is not due to any vice apparent upon the record, but to the policy of the state of California which refuses faith and credit to such a decree.

No reason suggests itself to us why the wife should consider herself bound by this state policy, or why she could not waive all questions of its effect upon her and accept the status given to her by the Nevada decree. We are of the opinion that, whether she had a right to do this or not, having done so and having, upon that theory, married another person, she is now precluded from setting up the invalidity of the Nevada decree and from claiming marital rights against her former husband.

The authorities are practically unanimous in favor of the proposition that a remarriage estops the party entering into it from denying the validity of the previous divorce. In *Marvin* v. *Foster,* 61 Minn. 154, [52 Am. St. Rep. 586, 63 N. W. 484], the decree of divorce showed want of jurisdiction on the face of the record, and was, consequently, void, even on collateral attack. The husband afterward married another person and lived with her for fourteen years. The court held that he was estopped to question the validity of the divorce. In *Mohler* v. *Shank's Estate,* 93 Iowa, 273, [57 Am. St. Rep. 274, 34 L. R. A. 161, 61 N. W. 981] where the facts were essentially the same, the wife, after a second marriage, attacked the decree. The court said: ''Having accepted the divorce as valid, in the way she did, she should be estopped from maintaining any claim to any part of the estate of her former husband.'' In *Arthur* v. *Israel,* 15 Colo. 147, [22 Am. St. Rep. 381, 10 L. R. A. 693, 25 Pac. 81], speaking of a similar case, the court said: ''We discover, upon principle, no sufficient reason why petitioner's conduct in the premises should not produce just as effective an estoppel as if she had received the proceeds of a void judgment for money. By her subsequent marriage with Israel during Arthur's lifetime, she accepted, so far as was within her power, the benefits or privileges of the divorce decrees. The fact that she did not then know that those decrees were void is a matter of no more consequence than is the ignorance in this respect of one who, knowingly in all other particulars, receives the fruits of an ordinary void judgment at law.'' The following cases are to the same effect: *Yorston* v. *Yorston,* 32 N. J. Eq. 495, 505; *Richeson* v. *Simmons,* 47 Mo. 20; *Whittaker* v. *Whittaker,* 51 Ill. App. 263; *Sedlak* v. *Sedlak,* 14 Or. 540, [13 Pac. 452]; *Richardson's Estate,* 132 Pa. St. 292, [19 Atl. 82].

The appellant cites *Norton* v., *Tufts*, 19 Utah, 470, [57 Pac. 409], and *Sammons* v. *Pike*, 108 Minn. 291, [133 Am. St. Rep. 425, 23 L. R. A. (N. S.) 1254, 120 N. W. 540, 122 N. W. 168], in support of the opposite doctrine. In *Norton* v. *Tufts* there was no previous divorce, but only a so-called "church divorce," under the sanction of the Mormon church. In point of law it was no more than an agreement of separation, but the parties supposed it to be a dissolution of the marriage. Both of them married again. It was held that she remained his wife and was not estopped to claim dower in his land against one who had taken a mortgage from the husband. Inasmuch as there was not even the semblance of legal proceedings for a divorce, to hold that an estoppel arose from the subsequent marriage would be the equivalent of saying that a divorce could be secured by contract. In *Sammons* v. *Pike,* there was no subsequent marriage by the wife, nor even acquiescence by her in the divorce except so far as mere inaction constituted acquiescence. The cases do not apply to the facts here under consideration.

The judgment is affirmed.

Sloss, J., and Lawlor, J., concurred.