In the Matter of the Estate of JOHN T. EICHELBERGER, Deceased.

Surrogate's Court, New York County, May 29, 1934.

*Herbert Kaufman*, for the administratrix.

DELEHANTY, S. In this proceeding to revoke letters of administration it is disclosed that the estate comprises the proceeds of a life insurance policy and that there exists additionally a right of action for damages for causing the death of deceased.

It appears without dispute that on December 17, 1916, deceased was ceremonially married to Tena Nowell at Irmo, S. C., where both spouses then resided. It appears from the certificate of discharge of deceased from army service that he enlisted at Lexington, S. C., on April 29, 1918, and that he was discharged on August 27, 1919. His army record shows that he was married.

The record shows that on January 16, 1921, in the city of New York deceased was married to Robertha Smith. Robertha Smith Eichelberger is the administratrix whose removal is sought. She testified that deceased stated to her that he had never been married and that she entered into the marriage ceremony just referred to on the assumption that this statement was correct.

There is presented in evidence by respondent a certificate showing that one Roger Nelson and one Tena Nowell made application to a judge of probate in South Carolina on June 25, 1921, for a marriage license and that they respectively signed affidavits containing the statement that the subscriber was legally capacitated to marry. The marriage certificate certifies that a notary performed the marriage ceremony on June 20, 1921, five days before the license was applied for. This latter date may be an error. The certificate in evidence showing the original marriage of deceased and Tena Nowell indicates that the Tena Nowell in question wrote her name and that in her affidavit she stated as of December 16, 1916, that she was nineteen years old. In the 1921 application and in the subscription to the marriage certificate itself the Tena Nowell in question appears to have made a mark. In stating her age she says as of June, 1921, that she was nineteen years and ten months old. The Tena Nowell of the December, 1916, marriage would of course have been twenty-three years and six months old in June, 1921, if she were nineteen years old in December, 1916.

There is produced in evidence by respondent a certificate showing that on August 28, 1926, one Arthur Addie and one Maggie Belle Davis appeared before the same notary public who performed the 1921 ceremony and obtained a license to marry on affidavits which contain the same statement as to capacity. This affidavit of 1926 is subscribed by Maggie Belle Davis with a mark and it gives her age as twenty-three years. In 1926 the Tena Nowell of the 1916 marriage would have been twenty-nine, and the Tena Nowell of the 1921 marriage would have been twenty-four if the ages stated in the earlier respective marriage applications were correct.

There is oral testimony by a sister of deceased who attended the marriage of deceased to Tena Nowell in 1916 that the same Tena Nowell married Roger Nelson and lived with him as his wife. This same witness testified that the Arthur Addie who is mentioned as the spouse in the third of these marriages had first married a sister of this witness' husband and after her death had married Tena Nowell. This witness states that Tena Nowell used the name Maggie B. Davis so as not to report herself twice in the same court house as an applicant for a marriage license.

There is no issue of either marriage.

The proof shows that the administratrix, Robertha Eichelberger, had ceased to live with deceased prior to his death in September, 1933. She dates in 1931 the termination of her occupancy of a common household with deceased. A witness who concededly lived with deceased throughout the period of his association with Robertha says that she left in 1926 and did not thereafter live with deceased. Petitioner for revocation (the original wife of deceased) is resident in the South and has not attended the hearings nor given any oral testimony. Her petition states that she was married to deceased on the date and at the place mentioned above and that no divorce, annulment or legal separation was granted. No proof is presented of any divorce, annulment or legal separation between Tena Nowell and deceased, except as such proof may be found in presumptions hereafter discussed.

Counsel respectively rely upon presumptions which they state arise under the facts outlined. Concededly these presumptions are fact presumptions and not presumptions of law. There is the presumption of continuity of the marriage status of deceased shown to have been established by his first marriage in 1916 to the petitioner in this proceeding. There is the presumption of regularity in the ceremonial marriage between Robertha Smith and deceased. There is a similar presumption of regularity of the ceremonial marriage entered into between Tena Nowell and Roger Nelson. There is similar presumption respecting her marriage to Addie. There is the presumption of regularity of conduct and of innocence of crime.

These presumptions conflict. The question for determination is which is the stronger in the given set of facts. No one questions the original marriage, nor is there any suggestion that there was any change in the marital status of deceased down to his discharge in August, 1919, at which time he accepted the certificate of discharge stating that he was married. It is his status alone which is here involved though proof has been received of the applications by petitioner for marriage licenses and of her respective marriages on the basis that such applications and such marriages may constitute admissions against her.

As to the marriage of deceased in this State to Robertha Smith, it is argued that deceased is to be presumed innocent of the crime of bigamy. Since under the law of New York an applicant for a marriage license must disclose whether he had theretofore been married, it must be assumed that deceased declared that his marriage to Robertha was his first. Respondent herself testifies that such was the basis upon which she married him. If he made such declaration in the marriage license application he would have falsified his application, irrespective whether the first marriage had been terminated by decree. So far as deceased is concerned, the proof by respondent would require the court to find that he had committed at least one offense. Whether as well he had committed another would seem in such circumstances to be unimportant.

In its discussion of conflicting presumptions, the Court of Appeals, in *People* v. *Creasy* (236 N. Y. 205, 223), said: " Certainly the presumption as to the living is greater than as to the dead, and every presumption is to be indulged in as to the former as against the latter. The dead need no presumption; the facts as to them are fixed, upon which time has placed an unchangeable and immutable end; the living do." In that case the court ruled that it was reversible error to refuse to charge a jury in a capital case that they were bound to commence consideration of the evidence by presuming that the subject of the alleged homicide had committed suicide and did not come to her death at the hands of the defendant. In *People* v. *Miller* (257 N. Y. 54, 61) this doctrine was disapproved and it was held on somewhat similar facts that the presumption against the commission of crime is a mere variation of statement of the statutory rule that every person charged with crime is presumed to be innocent.

If the court has correctly assumed that under the facts here detailed there arises in favor of respondent-administratrix no presumption predicated on the theory that to hold otherwise would involve an adjudication that deceased was guilty of a crime, there remains to her advantage only the presumption of regularity in her own marriage and such further advantage as she may claim by reason of the entry of petitioner into subsequent marriages.

The marriage of respondent-administratrix occurred on January 16, 1921. Prior to that date petitioner had not entered into any marriage other than her original marriage to deceased. If, therefore, any inference is to be drawn from the fact of entry by petitioner into subsequent marriages such inference would not be valid to support respondent's marriage, though it might be valid to negative petitioner's now claim of status as widow of deceased. Respondent here claims her status as widow of deceased only by reason of the

ceremonial marriage of January 16, 1921. As of that date no act of petitioner had transpired which diminished in any wise her status as wife of deceased. Her marriage to him was a ceremonial one. It was followed by matrimonial cohabitation. Deceased recognized it. He falsified to Robertha Smith when he told her that he was a single man who had never been married. If the proof were limited to this date in January, 1921, the presumption of regularity of the marriage of respondent-administratrix to deceased must be held insufficient to overcome the presumption in favor of petitioner.

Is there any difference in the situation because it has been shown (assuming that respondent has established the facts satisfactorily) that petitioner entered into two marriages after the date of deceased's original marriage to her? As stated there is no direct proof of annulment, divorce or separation nor any proof at all except as may be found in the declarations of petitioner in her applications for the licenses to enter into these marriages and in the fact of the marriages themselves. Perhaps in a criminal prosecution in this State for the crime of bigamy the presumption of innocence might warrant the jury in inferring either that such marital ties had been severed; or that deceased had previously been married and was, therefore, incompetent to enter into the marriage of 1916; or that petitioner had married another before her marriage to the deceased in 1916 and was at the time of such marriage incompetent to marry deceased, but became competent to marry her spouse, third in order, because of the death of the first after her marriage to deceased. As these speculations show, it is possible to conjure up various theories which might permit indulgence in the presumption. (*People* v. *Miller, supra.*)

Whether a presumption shall be indulged in at all and, if indulged in, what weight shall be given to it, depends upon the facts in the particular controversy. Here it seems plain that deceased and petitioner had little if any regard for standard rules of conduct or for statutory restrictions upon marriages. The facts seem to the court to establish that the only valid marriage in all of the four which are referred to in the testimony is the first one entered into between this petitioner and her husband, the deceased. Irrespective the perjuries and the bigamies thereafter committed, that marriage remained undissolved up to the date of the death of deceased.

The application to vacate the letters heretofore issued to Robertha Smith Eichelberger is granted; and letters will issue to petitioner upon furnishing a bond and qualifying according to law. Submit decree on notice accordingly.