In the Matter of the Estate of MARTHA BINGHAM, Also Known as MARTHA BROGAN BINGHAM and MARTHA BROGAN, Deceased.

Surrogate's Court, Kings County, July 21, 1942.

*Arthur Knox [David Stein & Jesse Starkman* of counsel], **for** Charles Brogan, petitioner.

*C. C. Van Valkenburgh,* for the respondents.

*Louis A. Brown,* for Loretta V. Kenny and Agnes **Dalton.**

*Edward J. Connolly,* special guardian.

McGAREY, S. In this proceeding the petitioner husband seeks to have determined the validity and effect of his exercise of an alleged right of election under section 18 of the Decedent Estate Law.

The petitioner and decedent were married in Ireland in 1887. Shortly thereafter they migrated to the United States and lived at various places in the city of New York until 1908, when they separated, and, except for short periods in 1908–1909, they lived separate and apart until the death of the petitioner's wife in 1941.

In 1909 the parties entered into a written agreement, by which, after reciting that: (1) They had been living separate and apart since July, 1908; (2) Various irreconcilable differences had arisen between them; (3) Petitioner had theretofore conveyed to the decedent real property having an equity of $20,000.00; (4) Petitioner paid decedent simultaneously with the execution of the agreement

$15,000.00 in cash and $15,000.00 by assignment of a bond and mortgage, making a total of $50,000.00 received by her; the decedent released the petitioner from " any obligation or duty to maintain and support or provide for her " thereafter.

The agreement itself did not provide for a separation of the parties, but merely arranged for a lump sum settlement of petitioner's future obligation to support and maintain decedent, and decedent in consideration thereof released any rights of dower which she had and agreed not to create any debt chargeable against the petitioner.

In June of 1913, the decedent-wife went to Carson City, Nevada, and in December, after remaining there the period of residence (six months) then required by the Nevada Law, she instituted a divorce proceeding on the ground of cruel and inhuman treatment.

The petitioner never submitted to the jurisdiction of the Nevada court, nor did he appear therein, nor was he served with process in such proceeding in Nevada, but he was personally served with process in the city of New York. Judgment was entered on default. The decedent was a resident of New York, except for the period from June, 1913, to January, 1914, when she resided in Nevada.

On February 7, 1922, while decedent was still alive, the petitioner entered into a ceremonial marriage with another person at Philadelphia, Pa., by a minister of the Gospel, pursuant to a license issued on his application, under oath, wherein he referred to his previous marriage and stated that the same had been dissolved by a divorce decree in the State of Nevada on January 29, 1914, referring to the above-mentioned decree obtained by the decedent.

On May 9, 1941, the decedent executed her last will and testament, in which she made no provision for the petitioner and she died eight days thereafter. The will was duly admitted to probate on October 18, 1941, and on November 5, 1941, the petitioner served and filed his notice of election under section 18 of the Decedent Estate Law.

The issues presented for consideration are: (1) is the divorce decree valid; (2) is the petitioner estopped from asserting the invalidity of the divorce decree or from asserting his rights under section 18 of the Decedent Estate Law by his use of such decree to obtain a license to marry another person and by his second ceremonial marriage pursuant to such license; and (3) did the petitioner abandon the decedent.

The decedent's residence in Nevada was solely for the purpose of giving the court colorable jurisdiction of the divorce proceeding. The divorce decree entered in such proceeding is not recognized as

valid by the courts of the State of New York (*Lefferts v. Lefferts*, 263 N. Y. 131).

The refusal of the courts of this State to recognize the validity of the Nevada divorce decree is based upon public policy, but that " policy is not embodied in any legislative enactment, or is not a rule of universal law," (*Hubbard v. Hubbard*, 228 N. Y. 81, 85). It was established for the protection of the citizens of this State who refused to be bound by such foreign decree (*Matter of Briggs*, 138 Misc. 136, 147), and may be waived by the party for whose benefit it is established. (See *Vernon v. Vernon*, 262 App. Div. 431, affd., 288 N. Y. 503; *Hull v. Hull*, 172 App. Div. 287, 293, and *Bruguiere v. Bruguiere*, 172 Cal. 199; 155 P. 988), where the court said: " No reason suggests itself to us why the wife should consider herself bound by the state policy, or why she could not waive all questions of its effect upon her and accept the status given to her by the Nevada decree."

However, by obtaining a marriage license and by remarrying, he accepted the benefits of that decree and recognized it as valid. By entering into such marital status and by using the Nevada divorce decree, with one hand, he cannot, with the other, retain the benefits which he could have derived out of the continued existence of the marital status with the decedent (*Mirizio v. Mirizio*, 242 N. Y. 75, 81).

Petitioner's acts did not give validity to the Nevada decree, but his acceptance of benefits of that decree estops him from asserting its invalidity or from asserting any rights incident to the continued existence of the marital status which such decree purported to dissolve (*Kelsey v. Kelsey*, 204 App. Div. 116; affd., 237 N. Y. 520; *Matter of Fingerlin*, 167 Misc. 770; *Matter of Healey*, 161 id. 298, 302; *Horn v. Bennett*, 253 App. Div 630; 109 A. L. R. p. 1023 et seq.; *Bruguiere v. Bruguiere, supra;* 31 C. J. S., §§ 109a, 110f.)

Section 18 of the Decedent Estate Law was enacted, as indicated in the report of the commission which recommended its adoption, to reward a faithful spouse by continuing after death the obligations which existed prior thereto in so far as the right to share in each other's property is concerned, and certainly was not intended to benefit or protect one spouse who had abandoned the other and the marital status existing between them by entering into a valid or invalid ceremonial marriage with a third party and thereafter cohabiting openly with such third party.

Abandonment means desertion of a spouse with intent not to return, or with an intent that the marriage should no longer exist (*Matter of Hess*, 143 Misc. 335, 336).

In *Powers* v. *Powers* (33 App. Div. 127), the court held that adultery was not a basis for judicial separation, but the Court of Appeals in *Hofmann* v. *Hofmann* (232 N. Y. 215) subsequently held that a separation may be had on the ground of cruel and inhuman treatment where the defendant's spouse was living in open and notorious adultery with another woman.

Adultery releases one spouse from his marital obligations to the other (*Mays* v. *Mays*, 22 N. Y. Supp. [2d], 702; affd., 261 App. Div. 984; *Hawkins* v. *Hawkins*, 193 N. Y. 409; *Deisler* v. *Deisler*, 59 App. Div. 207, 212).

Abandonment cannot be predicated upon a voluntary separation or living apart (*Matter of Stoltz*, 145 Misc. 799), but no decision has been called to the attention of the court which holds that such a separation prevents a subsequent abandonment within the meaning of subdivision 4 of section 18 of the Decedent Estate Law, no matter what the circumstances might be. The court knows of no more convincing evidence of abandonment than the public ceremonial remarriage of the petitioner to another woman in the lifetime of the decedent and his cohabitation with such woman as husband and wife.

The court agrees with the conclusion reached in *Matter of Green* (155 Misc. 641; affd., 246 App. Div. 583) and *Matter of Eichelberger* (152 Misc. 834), but the facts and issues in those proceedings differ from the facts and issues in this proceeding.

In *Matter of Green (supra)* the decedent abandoned the petitioner and lived in open adulterous intercourse with another woman before his wife lived in secret adultery with another man. The court there emphasized the secret nature of the adulterous relationship of the surviving spouse with another man, but neither divorce nor remarriage was involved.

*Matter of Eichelberger (supra)* involved a complicated series of marriages, separations and multiple marriages of the parties concerned. The court very aptly pointed out that the proof was insufficient to identify the decedent's first wife with the woman involved in the two subsequent marriages, referring particularly to the differences in age, the ability of the petitioner to write at the time of the issuance of the license of the first marriage and the use of a cross by the person claiming to be the petitioner for such purposes in the second and third marriages. The issues involved the conflicting rights of the first and second spouses to letters of administration and participation in the distribution of the decedent's estate, and the court very properly decided in favor of the first spouse. The court stated at page 837: " If, therefore, any

inference is to be drawn from the fact of entry by petitioner into subsequent marriages such inference would not be valid to support respondent's marriage, though it might be valid to negative petitioner's now claim of status as widow of deceased."

The court holds the petitioner's ceremonial remarriage and his continued open and notorious cohabitation thereafter with the other woman as husband and wife constituted an abandonment of decedent within the meaning of subdivision 4 of section 18 of the Decedent Estate Law.

The petitioner for the reasons above stated has no right to an election under section 18 of the Decedent Estate Law.

Proceed accordingly.