In the Matter of the Probate of the Will of VERGIE B. ANDREWS, Deceased.

Surrogate's Court, Broome County, January 19, 1949.

*Leon F. Simmonds* and *Robert D. Lackland* for Earle J. Saddlemire, proponent.

*John D. O'Loughlin* and *Louis H. Starikov* for William C. Andrews, contestant.

*Leslie J. Waite* for Herman Saddlemire, contestant.

PAGE, S.  The citation herein was served on William C. Andrews, surviving spouse of the deceased.  The said respondent appeared herein by John D. O'Loughlin, Esq., his attorney, authorization and notice of appearance having been duly filed accordingly on November 8, 1948.  Following this and on the 7th day of December, 1948, a preliminary examination of the attesting witnesses to the propounded instrument was held.  Thereafter and on the 24th day of December, 1948, objections to probate, in the usual form of such objections and demanding a jury trial, were filed on behalf of said respondent, William C. Andrews.  Another respondent, Herman Saddlemire, has also appeared and filed objections herein.  Deceased left an alleged last will and testament bearing date of July 31, 1947.  The husband of deceased is not mentioned in her purported will, the whole estate being given to various ones of her collateral relatives.

It is undisputed that the deceased was the plaintiff and said respondent was the defendant in a separation action in Supreme Court, Broome County, wherein a decree was rendered April 9, 1948, granting her a separation from the defendant, now respondent, William C. Andrews, on the ground of her abandonment by him.  Incidentally to such separation action, there had been a stipulation or agreement between the parties and their respective attorneys, providing for weekly payments by defendant to plaintiff for the latter's support as long as they both lived.  Also, among other things, this agreement contained a provision as follows: "Each party releases and relinquishes any and all claims and rights that he or she may have had, now have, or may hereafter acquire: (a). To share in any capacity or to any extent whatsoever in the estate of the other party upon the latter's death whether by way of statutory allowance or disposition in intestacy, or elect to take against the other party's last will and testament under Section 18 of the Decedent's Estate Law of the State of New York or otherwise, or (b). To act as executor or administrator of the other party's estate and each party releases and relinquishes any claim to any offsets or exemptions that such other party may have by reason of any

statutory provisions. It is the intention of the parties that this provision shall serve as a mutual waiver of the right of election in accordance with the requirements of subdivision 9 of Section 18 of the Decedent's Estate Law of the State of New York ''.

The objective of the present motion is to vacate the appearance herein of said respondent, William C. Andrews, and to dismiss his objections to probate.

Section 147 of the Surrogate's Court Act prescribes the qualifications of an objectant to the probate of a will. The positive provisions of this section are that·an eligible objectant must be a '' person interested in the event as devisee, legatee or otherwise '', either in the propounded will or codicil, or '' as devisee, legatee, executor, testamentary trustee or guardian in any other will or codicil alleged to have been made by the same testator and not duly revoked by him '', or, '' as heir-at-law, next of kin, or otherwise, in any property, any portion of which is disposed of or affected, or any portion of which is attempted to be disposed of or affected ''. The plain implication of these provisions of section 147 of the Surrogate's Court Act is that one who has none of these enumerated species of interest in the estate lacks the prescribed condition precedent to the status of a duly qualified objectant.

Of course, ordinarily, a surviving spouse would be a qualified objectant whether or not mentioned in the propounded instrument. This is not necessarily and invariably true. But, in any contrary instance, there must be a fully sufficient demonstration of some event or circumstances amounting, in legal effect, to a forfeiture by a previously eligible objectant of his or her status as such.

Here presented is the question as to whether or not there has been a forfeiture of such status, and whether such question may be determined upon a motion to dismiss a respondent's pleading and oust him from the proceeding.

I am of the opinion that, in the present instance, the question of status may be preliminarily determined upon motion, but, before going into the basis for such summary determination of the question, since the facts are undisputed, reference may be made to the legal application of the demonstration in support of the present motion tending to show the, ordinarily, unqualified status of a surviving spouse to be nonexistent in the present instance.

Section 87 of the Decedent Estate Law is relied on by proponent in support of his present motion. This section deals with

the " effect of divorce, abandonment, or refusal to support upon rights of a parent, or of former husband or wife, to distributive share ". None of the bases of forfeiture specified in section 87 of the Decedent Estate Law, except abandonment, is or could be applicable in the present case. This section provides, in effect, that abandonment of either spouse by the other shall have the effect of working a forfeiture of the inchoate status of the abandonor as a distributee of the abandonee. Here it is conceded that there was a decree in an action for separation entered only a few months before the death of the present alleged testatrix. The record of this decree shows that its basis was the abandonment of the deceased by the respondent. It thus appears that the question as to whether or not there was in fact an abandonment is, in the present case, capable of summary determination. It is *res judicata*.

It is true that section 87 fails to include a judicial separation as it does a divorce decree. Even in a case where a divorce decree is not otherwise recognized as valid in New York, it is one of the bases of forfeiture of status as a distributee, provided it had been procured by the would-be distributee. It would seem that section 87 ought to be amended to include a separation decree, the same as it does a divorce. It is not clearly understandable why it appears to have been deemed inadvisable to include cruelty and other grounds of separation not now included in this section in the same way that abandonment and a husband's nonsupport are treated therein. Possibly it was thought that doing so might open the door to too much controversy between relatives of a decedent and the surviving spouse. But, where there has been a *decree* of separation, based on some ground other than abandonment or nonsupport, and such decree has never been abrogated in any way, then it would seem that it should have the effect of nullifying the status of the culpable spouse.

This section does specify an " abandonment ", which is frequently difficult of factual determination. But the present case is free of such difficulty. The Supreme Court's finding of abandonment became binding on the present respondent by virtue of the separation decree and, admittedly, nothing has subsequently occurred to change that. In the present case, there is no question as to the separation decree's ever having been vacated or modified, or there having been a reconciliation of the parties, or a resumption of cohabitation. At least, anything of that kind has not been even intimated in connection with the hearing of this motion.

Over and beyond any question there might or could be as to a sufficient demonstration of abandonment, in the present instance, there is also to be considered the above-quoted contractual basis. It is well recognized that there is no legal impediment in respect to freedom of contract in relation to a spouse's prospective status as a distributee of the other spouse, even in a case lacking reciprocity or mutuality. (See Domestic Relations Law, § 51; also, see Decedent Estate Law, § 18, subd. 9. See, also, *Matter of Wallace,* 184 Misc. 448, 451, and group of cases on this point there cited.)

In the absence of even an allegation that the agreement entered into between the respondent and his wife is subject to some equitable condition or circumstance which might vitiate it, there can be no question but that he would be and is bound by this agreement despite the omission of section 87 of the Decedent Estate Law to take any account of cases where the situation is controlled or assumed to be controlled contractually. (For the sake of completeness, it would also seem that section 87 ought to be amended to include the situation where a surviving spouse had entered into a valid agreement to relinquish any and all interest in the other's estate, even though such an amendment would amount to nothing more than a codification of existing law on this subject.)

It appears that the respondent has lost his prospective position as a distributee of his wife which he originally acquired by his marriage. There being an absence of any basis, testate or intestate, of any possible interest of the respondent in the estate of the decedent, by the provisions of section 147 of the Surrogate's Court Act, it follows that he has no status as an objectant to the probate of her alleged last will and testament. Objections filed by one having no legal status to do so are a nullity and this would be so regardless of however valid the same objections might prove to be if interposed by a qualified objectant.

The fact that the surviving husband of the decedent, together with other necessary respondents, was cited herein, and the proponent's having been the one who brought him in as, assumedly, a necessary party, does not create any basis of an estoppel, as to the proponent, to now take the position that this respondent, because of having no status as an objectant, should not be accorded the right and privilege of subjecting proponent to a trial of objections. He did not change his position and act to his detriment because of any representation made by the pro-

ponent such as to result in any basis for an equitable estoppel against the proponent to now challenge his being a necessary or proper party. Moreover, the service of the citation herein upon respondent notified him of the institution of the probate proceeding and, thereby, afforded him an ample and timely opportunity to show that the proponent is or may be in error in relation to his status, but which he has not done even to the extent of showing that there could be any seriously debatable question about his being excluded by the provision of section 147 of the Surrogate's Court Act, in its application to the above-cited agreement, the validity of which he has not questioned. This is all a part of the necessity which exists in the process of determining proceedings involving estates.

. Since the earliest history of Anglo-Saxon jurisprudence to some extent, and much more importantly in recent times, the settled policy of the law to forestall or, failing that, then to abbreviate useless litigations has been developing. This policy is illustrated by courts' universal encouragement of voluntary settlements between prospective litigants, including the promulgation of rules of evidence protecting those who prefer peace to the point of making a compromise offer which sort of action on their part cannot be used against them if they are unsuccessful in bringing about a settlement. Courts have upheld the constitutionality and praised the usefulness of arbitration, as illustrated in the attitude expressed by the Court of Appeals in *Matter of Berkovitz* v. *Arbib & Houlberg* (230 N. Y. 261). The ancient law against champerty and maintenance is also illustrative of this general juristic philosophy. Also, along this same line, devices have been evolved for saving litigants the expense, worry and trouble incident to unnecessarily protracted litigations, as illustrated by our rules 103 to 113 of the Rules of Civil Practice.

Section 316 of the Surrogate's Court Act expressly brings to bear, in relation to a Surrogate's Court proceeding, the application of any appropriate provisions to be found in the Civil Practice Act or Rules of Civil Practice. The closest approach to applicability of any of such practice provisions, in the present instance, would be rule 113, but the provisions of this rule are such as to exclude the present case and, by the same token, it is indicated that this rule has not yet been fully developed to the full potentiality of its usefulness.

However, Surrogates' Courts have not regarded themselves as helpless in the face of such a situation as is here presented from

the standpoint of forestalling an absolutely senseless protraction of litigation. Cases showing that a preliminary issue of status may be and frequently is determined separately, if not preliminarily and summarily are: *Matter of Klein* (121 Misc. 568); *Matter of Kiltz* (125 Misc. 475); *Matter of Wallace* (184 Misc. 448); *Matter of Green* (165 Misc. 108); *Matter of Hagen* (119 Misc. 770, affd. 206 App. Div. 682); and *Matter of Hoyt* (55 Misc. 159, affd. 122 App. Div. 914, affd. 192 N. Y. 538).

Also, in *Matter of Cook* (244 N. Y. 63, 72) the court was dealing with a question of an alleged agreement not to contest a will, and stated: '' These questions are not for a jury as a matter of right, although section 68 [Surrogate's Ct. Act] authorizes a jury trial in the discretion of the surrogate. That these preliminary issues should be heard separate and apart from the probate proceedings and before the main contest, is not only justified by section 443, subdivision 3, of the Civil Practice Act, but apparently has been the uniform practice in the Surrogates' Courts. (*Matter of Fox,* 166 App. Div. 718; *Matter of Comins,* 9 App. Div. 492; *Matter of McGarren,* 112 App. Div. 503; *Matter of Hamilton,* 76 Hun, 200; *Matter of Peaslee,* 73 Hun, 113; *Matter of Zimmerman,* 104 Misc. Rep. 516; *Matter of Guilford's Will,* 185 N. Y. Supp. 248.) Such procedure would seem necessary in order to simplify the issues if the validity of a will is being tried out before a jury. Experience teaches that the issues for a jury should be as simple and as few as possible.''

If, upon the hearing of this motion, it had been shown that the respondent was, or was able to indicate that he might be, in a position to claim some equitable consideration in relation to the agreement, or that there could be a question to be determined upon trial as to the fact of his abandonment of his deceased wife, then, according to the procedure indicated in the *Cook* case, (*supra*) this court would be perfectly willing to direct a separate preliminary nonjury trial of the issue of status. But such is not the case here. There has been no demonstration whatever that the respondent might or could overcome the conclusive force of the documentary demonstration showing that he is absolutely disqualified as an objectant in the present proceeding and not a necessary or proper party herein. The composite result of the above consideration is that the present motion should be and is granted.

Enter order upon notice accordingly.