John D. Bennett, S.
This is an application to set aside and vacate the decree of probate of the will of Mary Jane Oswald, and for a supplemental citation to be issued to the petitioner as one of the distributees of the decedent “ so that he may examine the subscribing witnesses and the attorney or attorneys who prepared the said will and so that he may, if proper cause appears, be heard in opposition to the probate * * * and file objections thereto ”.
The will of Mary Jane Oswald, executed on November 28, 1958, was admitted to probate on November 13, 1963. The decedent died on October 23, 1963 in an airplane disaster in which her husband August William Oswald was also killed. The parties interested in and who were cited in the probate proceeding were the mother of Mary Jane and the executor and legatee, William Henry Oswald, a brother-in-law. The petitioner herein was not cited.
On the hearing the petitioner sought to prove a common-law marriage between the decedent and himself, contracted in the State of Pennsylvania, and still existing on the date of Mary Jane’s death, in an effort to establish him to be her surviving spouse and a distributee of her estate.
*775 The background facts of the petitioner and of Mary Jane Oswald, insofar as they are necessary to this decision, are as follows; The petitioner and one Lulu Feldmeyer were married in 1919 and lived in Baltimore, Maryland. Some 22 years later, on March 13, 1941, Lulu obtained a divorce from the petitioner in Baltimore. Within a few weeks thereafter the petitioner and Mary Jane allegedly entered into a common-law marriage in Pennsylvania and lived together as husband and wife for several years, later moving to New York where they continued their relationship.
Early in 1953 the petitioner and Mary Jane sought the advice of counsel regarding a divorce and were told that it was sufficient to exchange general releases, which was done. On July 11,1953, the petitioner entered into a ceremonial marriage with Ruth Zeitman with whom he presently resides as husband and wife. Mary Jane entered into a ceremonial marriage with August William Oswald subsequent to , the exchange of the general releases.
The issue of the existence of a common-law marriage was strongly contested at the hearing and thoroughly briefed by the parties. As the court views the matter, the question of whether or not a common-law marriage ever came into existence is academic. The ultimate issue, and the one to which the court directs its attention, is whether the petitioner stands today in the position of a distributee or “a person interested in the estate ”.
The petitioner has sought to prove his status as “ a person interested in the estate ” by proving that he is the surviving spouse of a common-law marriage. However, the petitioner cannot ignore the issue of abandonment at this time as affecting his rights as a surviving spouse. Surrogate McGarey, Kings County, in Matter of Bingham (178 Misc. 801, affd. 265 App. Div. 463), held that the petitioner’s subsequent ceremonial remarriage and his continued open and notorious cohabitation thereafter with the other woman, as husband and wife, constituted an abandonment of decedent within the meaning of subdivision 4 of section 18 of the Decedent Estate Law (see, also, Matter of Fingerlin, 167 Misc. 770, Matter of Goethie, 9 Misc 2d 906). In the Bingham ease (p. 805) the court said: “ Abandonment cannot be predicated upon a voluntary separation or living apart (Matter of Stolz, 145 Misc. 799), but no decision has been called to the attention of the court which holds that such a separation prevents a subsequent abandonment within the meaning of subdivision 4 of section 18 of the Decedent Estate Law, no matter what the circumstances might be. The court *776 knows of no more convincing evidence of abandonment than the public ceremonial remarriage of the petitioner to another woman in the lifetime of the decedent and his cohabitation with such woman as husband and wife.”
It is thus apparent that a determination of the alleged common-law marriage is completely overshadowed by the petitioner’s subsequent conduct in entering upon a ceremonial marriage in 1953 with the woman with whom he has since continuously resided as husband and wife. Were the common-law marriage found to have existed, his subsequent abandonment would terminate any interests he might have in this estate for all purposes.
Having found the petitioner is not a person interested in this estate, he has no interest in the probate proceeding under section 140 of the Surrogate’s Court Act, no right to examine witnesses under section 141 of the Surrogate’s Court Act, and no right to file objections to the probate of the will under section 147 of the Surrogate’s Court Act. Continuing, he has no right of election under section 18 of the Decedent Estate Law, no right to a distributive share under section 87 of the Decedent Estate Law, no right to the exemption under section 200 of the Surrogate’s Court Act, and no right to share in recovery under section 133 of the Decedent Estate Law and, of course, no right to letters.
The court will not be restricted in its decision by any attempt to confine its effect to the mere question of the right to examine witnesses to the will and the possible filing of objections to the probate. It is not in the interests of justice or the proper administration of this estate for the court to permit the identical issue of status to be retried every time a party desires to bring a new proceeding for whatever ulterior purpose may motivate the event. As was pointed out in Matter of Andrews (194 Misc. 217, 222-223): ‘‘ However, Surrogate’s Courts have not regarded themselves as helpless in the face of such a situation as is here presented from the standpoint of forestalling an absolutely senseless protraction of litigation.” The court there cites numerous cases holding that a preliminary issue of status may be and frequently is determined separately, if not preliminarily and summarily.