Filed 10/6/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of MINERVA and CESAR KALINAWAN. | H040921 (Santa Clara County Super. Ct. No. 1-06-FL131781) |
| MINERVA KALINAWAN, Respondent, v. CESAR KALINAWAN, Appellant. | |

Appellant Cesar Kalinawan challenges the trial court's order dismissing Cesar's request for a finding of nullity of marriage in respondent Minerva Kalinawan's action for a dissolution of marriage. He contends that the court erred in granting Minerva's in limine motion and dismissing his request based on its conclusion that he was estopped from challenging the validity of Minerva's divorce from her previous husband. We agree that the court erred and reverse its order.

## I. Background

Gerry R. Brillantes married Minerva, who was a United States citizen, in January 1986 so that he could come to the United States from the Philippines. Minerva's sister, Victoria, who was Brillantes's ex-wife, was one of the witnesses to the 1986 marriage, which took place in the Philippines.

In April 1991, Brillantes filed a verified complaint in Nevada seeking the dissolution of his marriage to Minerva. He declared that he had been a "bona fide resident" of Nevada since January 1990 and had "the intent to make the State of Nevada his home, residence and domicile for an indefinite period of time." Victoria filed an affidavit in support of Brillantes's action in which she declared that she was a Nevada resident and had personal knowledge that Brillantes had been a Nevada resident for "seven months . . . ." Minerva, who was living in Seattle at the time, submitted to the Nevada court's jurisdiction. Brillantes was granted a Nevada "Decree of Divorce" in June 1991.

Minerva and Cesar married in August 1991. They had three children together, and they separated in November 2005. In February 2006, Minerva filed a petition for dissolution. Cesar filed a response in March 2006. In November 2006, Cesar filed a request to amend his response to seek a nullity of marriage. The parties agreed to a judge pro tem, and the judge pro tem ordered child support and spousal support in 2008. The judge pro tem terminated his services in 2012 without ever addressing Cesar's request to amend his response.

In May 2013, Cesar again filed a request to amend his response "to request a nullity of marriage." The trial court allowed him to amend his response, and the amended response was filed in July 2013. Cesar alleged that his marriage to Minerva was "void" because it was "bigamous." Minerva opposed his request and alternatively asked the court to treat her as a "putative spouse" if it found their marriage to be void. The nullity request was set for trial on December 17, 2013.

Cesar's position was that Brillantes had been residing in California when he obtained the Nevada divorce by falsely claiming to be a Nevada resident. Cesar's trial brief asserted that the issues to be resolved at the December 2013 trial on his nullity request were (1) whether California "must give full faith and credit" to the Nevada divorce decree; (2) whether "Minerva and Mr. Brillantes were ever bona fide residents of

2

the State of Nevada"; and (3) whether Cesar "has standing to challenge the Decree of Divorce." He told the court that his witnesses would be himself, Minerva, Brillantes, and Victoria.[1]

Minerva's trial brief included a motion in limine asking the court to "dismiss Respondent's request for nullity" on the ground that "a spouse is estopped and has no standing to make a third party challenge to their spouse's prior divorce when they relied on the same in entering into marriage with that spouse." She claimed that the court could resolve this issue on a motion in limine because Cesar "has no standing and no valid cause of action" for nullity of marriage.

At the commencement of the December 2013 hearing, Minerva renewed her request that the court dismiss Cesar's action for nullity "because there is no valid cause of action." She claimed that "Dietrich[2] . . . is directly on point." The court took her motion under submission and told the parties that it would "rule on this motion prior to any return date" for the completion of testimony since the trial was not expected to be completed that day.

The only witness who testified at the December hearing was Brillantes. He testified that he could not remember any details about the Nevada divorce "because it was 22 years ago." What he could remember was that he "went to Reno by her father's convincing that I have to divorce Minerva so they can marry." He also testified: "Cesar Kalinawan's dad told me to get a divorce because he wanted his son to marry Minerva."

---

[1] Minerva expected to have the same witnesses with the exclusion of Victoria. The parties stipulated that the parties "can testify via offer of proof at the December 17, 2013 trial, subject to cross examination."

[2] *Dietrich v. Dietrich* (1953) 41 Cal.2d 497 (*Dietrich*) held that a second husband who had, "[w]ith full knowledge of the circumstances under which that divorce was obtained, and in reliance on such divorce, . . . went through a marriage ceremony and lived with [the wife] as her husband for many years" was estopped from challenging the validity of the divorce decree. (*Dietrich*, at p. 505.)

"He was the one who -- I didn't know about the divorces in Nevada. He was the one who told me." Brillantes testified that Minerva, who was living in Seattle at that time, had no involvement in procuring the divorce. Brillantes insisted that he had resided in Nevada from early April 1991 through late July 1991. He left Nevada in late July 1991 and returned to California because he "could not find a job." At the end of the December 2013 hearing, Brillantes was excused, the court continued the matter to March 4, 2014, and Victoria was ordered to appear at the continued hearing.

In February 2014, the court granted Minerva's motion in limine and denied Cesar's request for nullity on the ground that Cesar was estopped from challenging the validity of the Nevada divorce decree. The court rejected Minerva's claim that Cesar lacked "standing," but it agreed with her contention that he should be estopped from challenging the decree. The court premised its order exclusively on the following undisputed facts: "Respondent chose to marry Petitioner knowing that she had been previously married to Brillantes, and in reliance on her assertion that her divorce from Brillantes was final. For the next 14 years, Respondent chose not to investigate the circumstances of Petitioner's divorce from Brillantes. Instead, he chose to live with Petitioner as her husband and raise three children with her. Respondent's conduct in this regard establishes that he accepted the benefits of his purported marriage to Petitioner. As a result of his own conduct, Respondent is estopped from attacking the validity of Petitioner's divorce from Brillantes."[3] Cesar timely filed a notice of appeal from the court's order.[4]

---

[3]     Cesar does not dispute the facts upon which the trial court based its decision.

[4]     Although Cesar designated three deposition transcripts (those of Minerva, Victoria, and Brillantes) to be included in the clerk's transcript, none of those items were included because the clerk could not locate them. These deposition transcripts had been lodged with the trial court at the December hearing after the court refused to admit them into evidence. They were lodged so that they would be available to impeach witnesses.

4

## II.  Discussion

Cesar claims that the trial court erred in finding that he was estopped from challenging the validity of the 1991 Nevada divorce decree.[5]  He contends that neither *Rediker v. Rediker* (1950) 35 Cal.2d 796 (*Rediker*), upon which the trial court relied, nor "the general principle of equitable estoppel" applies here.  Because he concedes that the facts upon which the trial court based its decision are undisputed, Cesar contends that we should exercise de novo review.

*Rediker* was an appeal from a judgment annulling a marriage as bigamous. (*Rediker*, *supra*, 35 Cal.2d at p. 798.)  The defendant had obtained a default divorce from his first wife in Cuba in January 1939 and married the plaintiff in November 1939. (*Ibid.*)  After the defendant abandoned her, the plaintiff brought an action for dissolution of the marriage.  The defendant cross-complained for annulment on the ground that the plaintiff was still married when they wed.  The trial court rejected that argument, but it found that the defendant was still married to his first wife when he wed the plaintiff.  The trial court concluded that the Cuban divorce decree was invalid because the defendant's first wife had never been served with process.  (*Rediker*, at pp. 798-799.)  The trial court accorded full faith and credit to a 1944 divorce decree from Florida dissolving the defendant's first marriage and concluded that it established that the prior Cuban divorce decree was invalid.  (*Rediker*, at pp. 799-800.)

On appeal, the California Supreme Court found that the Cuban divorce decree was entitled to full faith and credit because the Cuban court had had jurisdiction over the defendant, who was indisputably domiciled in Cuba.  (*Rediker*, *supra*, 35 Cal.2d at p. 804.)  The court went on to say:  "Even if the Cuban decree were invalid, defendant cannot contest its validity.  The validity of a divorce decree cannot be contested by a party who has procured the decree or a party who has remarried in reliance thereon, or by

---

[5]     Minerva has not filed a respondent's brief in this appeal.

one who had aided another to procure the decree so that the latter will be free to remarry." (*Rediker*, at p. 805.) "The doctrine of estoppel has also been held applicable to cases in which a husband sought to assert the invalidity of his or his wife's earlier divorce from another as a defense to her action for divorce and alimony." (*Rediker*, at p. 806.) The court reversed the judgment of annulment. (*Rediker*, at p. 808.)

Cesar maintains that *Rediker* has no application here because, unlike the defendant in *Rediker*, he did not procure or aid in procuring the Nevada divorce decree. The facts of *Rediker* are indeed distinguishable. Nevertheless, we must consider whether the "doctrine of estoppel" upon which the court in *Rediker* relied may also apply to a defendant, like Cesar, who has not been shown to have had any role in procuring the allegedly invalid divorce decree.

The estoppel doctrine upon which the *Rediker* court relied, which is known as "quasi estoppel," " 'is based upon the principle that one cannot blow both hot and cold, or that one "with full knowledge of the facts shall not be permitted to act in a manner inconsistent with his former position or conduct to the injury of another." ' " (*Harlan v. Harlan* (1945) 70 Cal.App.2d 657, 661-662 (*Harlan*).)[6] This type of "[e]stoppel long has been utilized to prevent a party from contesting the validity of a judgment that was procured by that party." (*Kristine H. v. Lisa R.* (2005) 37 Cal.4th 156, 162.) It is akin to " 'judicial estoppel' " because it precludes a party from adopting inconsistent positions. (*People ex rel. Sneddon v. Torch Energy Services, Inc.* (2002) 102 Cal.App.4th 181, 188.) "Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. [Citations.] The doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies." (*Id.* at p. 189.)

---

[6] The trial court also cited *Harlan* as support for its estoppel finding.

Quasi-estoppel applies where an individual previously took a position that the divorce was valid and subsequently takes the position that the divorce is invalid. We can find no support for extending quasi-estoppel to a person who was not a party to the divorce proceeding, did not procure or aid in procuring the divorce decree, and did not have full knowledge of the circumstances under which the divorce decree was obtained. Although there are numerous cases applying the doctrine of quasi-estoppel to a challenge to a divorce decree, none of them has applied this doctrine to a person in Cesar's position.

In *Bruguiere v. Bruguiere* (1916) 172 Cal. 199 (*Bruguiere*), the first husband went to Nevada and obtained a decree of divorce from his wife. The wife neither procured nor aided in procuring that divorce. When she learned of it, she married a second husband. After subsequently learning that the Nevada decree was invalid, she had her second marriage annulled and brought an action against the first husband for separate maintenance. (*Bruguiere*, at pp. 200-201.) The California Supreme Court held that she was "estopped by her conduct" from questioning the validity of the Nevada decree because she had relied on it in marrying her second husband. (*Bruguiere*, at p. 203.) "The wife herself, when informed of the Nevada decree, acquiesced therein and proceeded to act thereon by herself entering into another marriage contract and living with the new husband for several years in accordance therewith." (*Bruguiere*, at p. 203.) Since the wife in *Bruguiere* was a party to the Nevada divorce proceeding, her subsequent disavowance of the Nevada decree fell squarely within the scope of the quasi-estoppel doctrine.

In *Dietrich*, the second husband was aware of all of the circumstances under which the wife had obtained a Nevada divorce decree from her first husband. The California Supreme Court, relying on *Rediker*, held that the second husband was estopped from challenging the validity of the Nevada divorce because "[w]ith full knowledge of the circumstances under which that divorce was obtained, and in reliance on such divorce, [the second husband] went through a marriage ceremony and lived with [the wife] as her

7

husband for many years." (*Dietrich*, *supra*, 41 Cal.2d at p. 505.) Because the second husband in *Dietrich* knew of all of the circumstances under which the Nevada decree had been obtained and yet relied on its validity in marrying the wife, it was reasonable to find him to be within the purview of the quasi-estoppel doctrine.

No California case that we are aware of has extended the quasi-estoppel doctrine to a person who was unaware of the circumstances under which a divorce decree was obtained, was not a party to the divorce proceedings, and did not procure or assist in procuring the divorce decree. (See e.g. *Watson v. Watson* (1952) 39 Cal.2d 305, 307 [husband estopped from challenging divorce decree that he obtained from his first wife]; *Harlan*, *supra*, 70 Cal.App.2d at p. 661 [husband estopped from challenging wife's divorce decree that he procured for her]; *Estate of Shank* (1957) 154 Cal.App.2d 808, 809-812 [party to divorce decree estopped from challenging its validity even though he did not procure it].) Such an extension of the doctrine of quasi-estoppel would be inequitable because it would preclude an innocent second spouse from challenging the validity of a divorce decree that the second spouse had no reason to believe was invalid when he or she married a divorced person. We decline to ratify such an extension.

Since the undisputed facts upon which the trial court relied did not show that Cesar was a party to the Nevada divorce decree, that he had procured it, had assisted in procuring it, or had full knowledge of the circumstances under which it had been procured, the trial court erred in finding that the doctrine of quasi-estoppel applied to Cesar.[7]

---

[7]    We express no opinion on the validity of the Nevada divorce decree, and we do not preclude Minerva from seeking to establish, after a full evidentiary hearing, that Cesar should be estopped or barred for some other reason from challenging the Nevada divorce decree. Our holding is limited to the undisputed factual basis underlying the court's in limine ruling.

## B. Equitable Estoppel

We also agree with Cesar that the doctrine of equitable estoppel did not apply here under the undisputed facts relied upon by the trial court.[8] "The doctrine of equitable estoppel is founded on concepts of equity and fair dealing. It provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment. The elements of the doctrine are that (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." (*Strong v. County of Santa Cruz* (1975) 15 Cal.3d 720, 725.) Cesar was not "apprised of" facts that Minerva was "ignorant of." Hence, equitable estoppel was inapplicable.

## III. Disposition

The trial court's order granting Minerva's motion in limine and denying Cesar's request for nullity of marriage is reversed, and the matter is remanded with directions to vacate that order and to enter a new order denying Minerva's motion in limine. Cesar shall recover his costs on appeal.

---

[8] "'Equitable estoppel "focuses on the relationship between the parties," and is designed to protect litigants from injury caused by "less than scrupulous opponents." By contrast, judicial estoppel focuses on "the relationship between the litigant and the judicial system," and is designed "to protect the integrity of the judicial process."'" (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183.)

_____
Mihara, J.

WE CONCUR:


_____
Elia, Acting P. J.


_____
Bamattre-Manoukian, J.


In re Marriage of Kalinawan
H040921

Trial Court:                              Santa Clara County Superior Court


Trial Judge:                              Honorable Theodore C. Zayner


Attorney for Appellant:                   Stuart Fishman
                                          Law Offices of Stuart Fishman


Attorney for Respondent:                  No Appearance for Respondent


In re Marriage of Kalinawan
H040921


11