[Civ. No. 11557. First Appellate District, Division Two.—December 18, 1940.]

HELA GUMP, Respondent, v. RICHARD B. GUMP, Appellant.

Clarence Hansen for Appellant.

Louis C. Runge and Kent Rogers for Respondent.

NOURSE, P. J.—Two actions were filed against the defendant—one for the rescission of a property settlement agreement, and one to set aside a final decree of divorce. The actions were consolidated for trial and plaintiff had one judgment granting her the relief prayed for in each action.

The defendant herein commenced a suit for divorce against this plaintiff in February, 1936. His wife filed a cross-complaint. A property settlement was executed by the parties, and, on March 19, 1936, an interlocutory decree of divorce was entered on the cross-complaint. On March 31, 1937, a final decree of divorce was entered at the instance of the husband while the parties were living together openly as husband and wife. The payments in the nature of alimony called for by the property settlement were all made for the benefit of the husband by his father, and a full release was taken from this plaintiff of all claims arising under the agreement.

On this appeal the first two points raised by appellant are that the evidence does not support the finding that the parties were reconciled before the entry of the final decree. Upon his statement of the evidence the question would appear to be debatable. But, when this question is raised, we must look to the evidence supporting the finding as well as to that which is contradictory. With the exception of the denials of the appellant, which were generally in the nature

of a failure of recollection, the witnesses testified that from about May 1, 1936, to about March 1, 1937, the parties were constantly in the company of each other and had marital intercourse on many occasions; that, from about March 1, 1937, to about May 1, 1937, the parties continuously lived together, part of the time in an apartment maintained by the wife, and later in an apartment maintained by the husband. They freely cohabited and conducted themselves as husband and wife. The parties were living in Hollywood where both were engaged in a mutual struggle to make a living—the appellant as a song writer, the respondent as an actress. Following the entry of the interlocutory decree the wife shared with the husband her food, her living quarters, and her alimony. The respondent testified that, from about the time of the entry of the interlocutory decree, the appellant frequently urged a reconciliation, and that she heeded these solicitations about February 3, 1937, and that later she moved into his apartment and lived with him until after the entry of the final decree of divorce. A Mr. Trebitsch occupied another room in the same apartment. He paid one-third of the rent of the apartment, and the appellant paid two-thirds. During this period the home of the husband was the only known residence of the wife, and the place to which her mail was addressed. It was in this manner that she received notice of the entry of the final decree, when she and the appellant were awakened at about 11:30 A. M. by the delivery of the morning mail. She testified: "Mr. Gump and I were still sleeping when Mr. Trebitsch came in and brought my mail and it was the final decree and in an open envelope and I did not pay any attention to it, I just discarded it and Mr. Gump didn't pay any attention to it either, he just glanced at it and said, 'Oh, that is nothing.' " She also testified that she continued to live with the appellant in this apartment for some weeks following the entry of the final decree, and that she was led to believe from his conduct that this decree was void and that they had become fully reconciled.

The relations of the parties during the periods in which the trial court found there was marital cohabitation were testified to by other witnesses. It is true that some of the evidence of cohabitation related to a period after the entry of the final decree, but much of it tended to prove a reconciliation prior to that, and no other finding would have been supported by the evidence. The question whether these facts

are sufficient to support the finding of reconciliation cannot be determined by the appellate court as a pure question of law upon reading the printed record. The appellant must affirmatively show where the trial court made error. ■ The correct rule is stated in *Ruggles* v. *Bailey,* 15 Cal. App. (2d) 555, 556 [59 Pac. (2d) 837], as follows: " 'Reconciliation, like condonation, is a state of mind to be determined from all the evidence including rational inferences.' (*Keller* v. *Keller,* 122 Cal. App. 712, 715 [10 Pac. (2d) 541].) 'The real question before the court was whether the circumstances as a whole showed a mutual intention to effect a reconciliation and unite in mending the break in the matrimonial yoke. This was a question of fact for the determination of the judge, who had the parties before him and patiently listened to each.' (*Keller* v. *Keller, supra.*)" Here the respondent testified that the parties agreed to a reconciliation and resumed their marital relations. The appellant testified that they did not, but he was contradicted by other witnesses in material portions of his testimony. If for this reason the trial court rejected his testimony on the matter of reconciliation and believed the testimony of the respondent, the appellant may not say now that the finding is not supported by the evidence.

■■ The appellant argues that it was error to set aside the final decree because fraud in its procurement was neither pleaded nor proved. In this the appellant is in error. The complaint alleged that the final decree was entered at the request of appellant and without the respondent's knowledge or consent, and after the parties had become reconciled. The evidence proved these allegations. It will be presumed, without special pleading or proof that, if the court had been informed of these circumstances, it would have refused to enter the decree. A fraud upon the court was thus pleaded and proved, and the strict rules applying to the pleading of fraud generally are not controlling under these circumstances. ■ The interest of the state in the preservation of the marital relation makes it an interested party in divorce proceedings and any action of the principals which conceals the true facts and circumvents this interest is against the public policy and is a fraud upon the court. The rule is stated in *McGuinness* v. *Superior Court,* 196 Cal. 222, 230 [237 Pac. 42, 40 A. L. R. 1110], as follows: "It was also extrinsic fraud in so far as

the court itself granting such decree was concerned since it was effected through concealment from the court in an *ex parte* proceeding of facts which the defendant in said action was bound to disclose and which if disclosed would have rendered improper the granting and impossible the procurement of such final decree."

In the same connection the appellant argues that the relief granted was improper because, though the action purported to be in equity, it sounded in law and should have been treated as a motion made under section 473, Code of Civil Procedure, to set the decree aside. The same point was decided adversely in *Baker* v. *Baker,* 217 Cal. 216, 217 [18 Pac. (2d) 61], where the court said: "It is settled that equity will relieve an injured party from the effect of a judgment procured, as was the decree here vacated, by extrinsic fraud. (*Sohler* v. *Sohler,* 135 Cal. 323 [67 Pac. 282, 87 Am. St. Rep. 98]; *Bacon* v. *Bacon,* 150 Cal. 477, 481 [89 Pac. 317]; *Simonton* v. *Los Angeles T. & S. Bank,* 192 Cal. 651, 656 [221 Pac. 368]; *Jeffords* v. *Young,* 98 Cal. App. 400, 404 [277 Pac. 163].) The fact that a party injured by a fraudulent judgment may move in the principal action to have the same set aside does not oust equity of its jurisdiction in this particular. The remedies are distinct and cumulative. The decisions are numerous to the effect that a suit in equity to vacate a judgment procured by extrinsic fraud may be prosecuted by the injured party even though there be available to him in the principal action a motion to vacate under section 473 of the Code of Civil Procedure."

Finally it is argued that the respondent is estopped by her conduct and that she is guilty of laches in failing to commence her action until six months after the entry of the final decree. Both of these questions are primarily questions of fact and hence within the province of the trial court to decide. As to the defense of estoppel, it was held in the early case of *Wells* v. *Stout,* 9 Cal. 479, 491, that the reconciliation coupled with cohabitation in pursuance thereof operates to avoid the agreement for separation. This doctrine was approved and extended in *Peters* v. *Peters,* 16 Cal. App. (2d) 383, 386, 387 [60 Pac. (2d) 313]. "The effect of the reconciliation is to avoid any contract made for the parties by an interlocutory decree with respect to property rights . . . " (Citing cases.) Evidence was offered to show that the moneys which respondent received from appellant's father in the

nature of alimony were used in part for the joint living expenses of these parties during the period following the interlocutory decree, and that whatever portion was received by respondent after the entry of the final decree was taken in contemplation of appellant's assurances to her that the reconciliation was complete. There is no showing that she received under the agreement anything more than she was entitled to as the wife of appellant. This evidence fully supports the finding against appellant's claim of estoppel.

The question of laches may be decided upon this simple principle of settled law—that when laches does not appear affirmatively on the face of the record it is incumbent upon the party claiming it to prove his claim. One essential element of the plea of laches is injury resulting from the delay. (10 Cal. Jur. 530.) The appellant has not met this burden of proof.

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.