[Civ. No. 6428.    Third Dist.    Dec. 2, 1941.]

ASSETS CORPORATION (a Corporation), Respondent, v.
    PERRIN PROPERTIES, INCORPORATED (a Cor-
    poration), Appellant.

Keyes & Erskine and Leslie L. Roos for Appellant.

George E. Farrand, Farrand & Farrand, Leonard B. Slosson, Edward W. Tuttle and Edward E. Tuttle for Respondent.

THOMPSON, Acting P. J.—This is an appeal by one of the defendants, Perrin Properties, Incorporated, from a judgment foreclosing liens created by a written agreement and reaffirmed by a former consent judgment on 34,000 acres

of unimproved timber land in Tehama, Trinity and Mendocino Counties, to secure the payment of an acknowledged indebtedness of $350,000, together with five per cent interest thereon from August 1, 1934.

It is contended the former judgment is void for extrinsic fraud exercised in procuring consent therefor, consisting of failure on the part of Los Angeles Trust & Savings Bank, trustee of the property involved, to disclose to the defendants the known fact that a "transportation problem" existed which effectively prevented the logging and sale of the timber or the disposal of the lands in question; that the court erred in excluding evidence of that fraud; that the finding of the court that no agreement was made to forbear instituting foreclosure proceedings while reasonable efforts were being conducted to sell the property, provided taxes and fire protection assessments were paid, is not supported by the evidence, and that plaintiff is estopped from asserting that the oral agreement not to bring foreclosure proceedings is unenforcible and void since it has accepted benefits from the agreement.

The record shows that E. B. Perrin and wife were the owners of the 34,000 acres of unimproved timber land which are described in the complaint, together with a large number of cattle and other property located in Arizona. They were the parents of six children, who are named as defendants in this case. February 15, 1922, Mr. and Mrs. Perrin executed a trust agreement affecting the property which is involved in this suit, by the terms of which the Los Angeles Trust and Savings Bank became trustee thereof for the benefit of the adult children. For several years that trust was administered, during which time the bank advanced to the beneficiaries large sums of money aggregating more than a million dollars, some of which loans were represented by promissory notes. The Los Angeles Trust & Savings Bank was succeeded as trustee by Security First National Bank of Los Angeles, and later by Assets Corporation, the plaintiff in this action. March 26, 1932, the trustor, E. B. Perrin, died. His son, E. B. Perrin, Jr., was thereafter appointed executor of his will. The bank assigned to Assets Corporation its claims for the money advanced. The Bank and Assets Corporation threatened suit to enforce payment of the money loaned to the heirs of E. B. Perrin, deceased, who were beneficiaries of the trust. The beneficiaries and heirs subsequently charged the trustees with causing great loss to

the estate by means of mismanagement in the administration of the trust. January 30, 1935, the trustee, the heirs and beneficiaries, for the purpose of settling all differences between them, signed a written agreement terminating the trust and stipulating to the existence of an indebtedness on the part of the heirs and beneficiaries in the aggregate sum of $350,000, for which they covenanted to execute notes secured by trust deeds creating first liens on the timber lands in question. The notes representing the agreed indebtedness were dated December 1, 1933, and became due four years from that date. They provided for interest at the rate of five per cent per annum from August 1, 1934, payable yearly. The agreement specifically states that the holder of the notes would rely solely on the liens for satisfaction of the debt, and that there was to be no personal liability on the part of the makers of the notes beyond the security therefor created by the trust deeds. The counter-claims against the trustees were waived. The agreement recited that the instrument was signed by the beneficiaries and that its terms were approved by them after they had investigated the trust and all matters with relation thereto and that they were possessed of full knowledge thereof.

The Perrin Properties, Incorporated, was thereupon organized to take title to the timber lands and properties belonging to the heirs and to the beneficiaries of the trust. Subsequently, by consent of all parties, in lieu of the execution of the notes and trust deeds for $350,000, a suit was commenced March 9, 1936, for the purpose of incorporating the terms of the written agreement of compromise in a formal judgment of court. The appellant in this suit and all interested parties appeared in that action and with full knowledge of its terms consented to the judgment which was duly entered in accordance with the express terms of the written agreement. That judgment determines that the heirs represented by Perrin Properties were indebted to Los Angeles Trust and Savings Bank in the sum of $350,000, due four years from December 1, 1933, together with five per cent interest thereon from August 1, 1934, and reestablished the liens provided for in the written agreement to secure the payment of that agreed indebtedness. No payment on account of either principal or interest on that indebtedness was ever made.

February 7, 1938, more than four years after the notes became due, this suit was instituted to foreclose the liens on the timber lands. The defendants answered the foreclosure complaint admitting their indebtedness and acknowledging their consent to the rendering of the former judgment creating the liens. They also filed a cross-complaint couched in three counts, the second and third of which were voluntarily dismissed at the time of the trial. The first count alleges that the defendants consented to the rendering of the former judgment but that it was procured by extrinsic fraud of the trustee bank consisting of its failure to disclose to the defendants its knowledge of the fact that a ''transportation problem'' existed which absolutely prevented the sale of the timber or lands. It was also alleged, as a defense to this suit for foreclosure, that the trustee bank orally agreed not to enforce the former judgment while the defendants were engaged in *bona fide* efforts to sell the lands provided they paid the taxes and charges for forest fire protection in the meantime, which conditions they fulfilled.

Findings were adopted favorable to the plaintiff in every essential respect. The court specifically found that the allegations of the cross-complaint, with regard to the asserted fraud on the part of the trustee bank, in failing to disclose to the defendants its knowledge of the existence of a transportation problem incident to the operation of a lumber enterprise on the land in question, were untrue. It was also affirmatively determined that the defendants had full knowledge of that problem, and that they were afforded reasonable opportunity to sell the property before this suit was commenced; that neither the plaintiff nor its predecessors in interest promised to refrain from foreclosing the liens for any period of time, but that the defendants owe the debt alleged in the complaint, and are in default with respect thereto.

Judgment for the principal sum alleged with interest and counsel fees was thereupon rendered against the defendants in the aggregate sum of $439,042.33, together with a decree of foreclosure of the liens and for sale of the mortgaged properties in the manner provided by law, to satisfy the indebtedness. It was held that the plaintiff was not entitled to a deficiency judgment for any sum beyond the aggregate amount recovered from the sales of the lands impressed with the liens.

From that judgment the defendant, Perrin Properties, Incorporated, has appealed.

We are satisfied the findings and judgment are adequately supported by the evidence. The record is clear that after a controversy between the trustee and the beneficiaries of the Perrin trust, their counter-claims were compromised and settled by the terms of the written agreement dated January 30, 1935, in which all claims against the trustee were waived and it was conceded the defendants owed to the bank, trustee, the sum of $350,000, with interest at five per cent per annum from August 1, 1934, to be evidenced by promissory notes to be executed; that the notes would become due four years from December 1, 1933, and become secured by first liens upon the timber lands described; that the same terms which were incorporated in that written agreement were adopted and incorporated in a judgment which was subsequently rendered against the defendants March 9, 1936, with their full knowledge and by their consent; that defendants do not deny that obligation, but evidently seek, only, to delay the foreclosure until they have further opportunity to sell the lands and to thereby satisfy the debt; that neither principal nor interest has been paid on the indebtedness, and the defendants are in default in that regard. There is now due plaintiff the entire sum of principal and interest as provided by the terms of the written agreement and by the former judgment of court.

It will be observed the defendants' cross-complaint does not allege that the former judgment is void on account of the asserted extrinsic fraud in failing to inform them of an existing "transportation problem" which prevented sale of the land. There are neither allegations in the pleadings to that effect nor proof of the nature of said alleged problem. There are neither allegations nor proof that the defendants relied solely upon the proceeds derived from selling the timber or the encumbered lands from which to pay their acknowledged indebtedness. The evidence is undisputed that there was a definite depression in the lumber business during that period of time, which rendered it very difficult to sell lands of that character at reasonable prices, but, except for that fact, there is no evidence in the record and no specific offer to prove any particular transportation problem peculiar to the land in question which prevented its sale. We are there-

fore of the opinion the findings and judgment are supported by the evidence.

■ It is true that the invalidity of a judgment alleged to have been procured on the ground of extrinsic fraud may be available as a defense to a suit to foreclose liens dependent upon that judgment without the necessity of previously instituting a separate action for that purpose. (*J. B. Colt Co.* v. *Freitas,* 76 Cal. App. 278, 287 [244 Pac. 916]; *Estate of Cover,* 188 Cal. 133, 140 [204 Pac. 583]; *Stiles* v: *Bodkin,* 43 Cal. App. (2d) 839 [111 Pac. (2d) 675]; 12 Cal. Jur. 786, sec. 52.)

In the present case, however, the issue of extrinsic fraud was determined adversely to the defendants.

■ There is no doubt the trustee occupied a fiduciary relationship toward the defendant and that the bank was bound to disclose to them all material facts within its knowledge and unknown to them, provided the suppression of such facts detrimentally affected their interest in the property which was involved in the subject-matter of either the written agreement or the consent judgment. (*Allen* v. *Meyers,* 5 Cal. (2d) 311 [54 Pac. (2d) 450]; 26 R. C. L. 1375, sec. 236; 26 C. J. 1071, sec. 14; 1 Restatement, Trusts, 619, sec. 217.)

■ In the present case, however, there is no substantial evidence, and there was no specific offer to prove by competent testimony that material facts regarding plaintiff's knowledge of a transportation problem which would prevent the sale of the timber or land were suppressed. The reading of the record leaves the impression that no such problem existed. Moreover, there is substantial evidence that the defendants were fully informed of all the surrounding circumstances and conditions of the depressed lumber market and of all facts which might affect the sale of the lands. ■ E. B. Perrin, Jr., one of the defendants, was appointed executor of his father's estate in March, 1932, and it was his duty to inform himself regarding the lands and property belonging to that estate. Mr. Resleure for many years had been particularly active in the interest of the heirs of the Perrin property. We think there is little merit in appellant's contention that the former judgment was procured by extrinsic fraud.

The court did not err in excluding testimony regarding the existence of a transportation problem incident to the

lands in question. The evidence upon that subject, to which objections were sustained, was either hearsay, or incompetent, or the questions called for conclusions of the witnesses. After a diligent search of the record, we are unable to discover that counsel for the defendants ever made a statement to the court of any competent evidence which they desired to adduce, tending to show that a transportation problem existed incident to the land, or what the nature of that alleged problem was, or that it prevented the marketing of the lumber or the sale of the property. No witness who claimed to have knowledge of those asserted facts was called or examined. In truth, Mr. Resleure, who was the attorney and president of the Perrin Properties, Incorporated, and who personally participated in the conferences which led to the compromise incorporated in the written agreement and in the prior judgment, testified that no such problem actually existed. On the contrary, he said that the alleged inaccessibility of the timber was a mere "legend or fable." It is true that the witness testified "We have contacted practically every possible buyer of timber lands" and that "no buyers wanted the property at any price because nobody had any need for it." But it appears the refusal to purchase the property was for the reason that a general depression then existed, rendering it extremely difficult to market lumber. It does not appear the land was unsalable because some logging or transportation problem existed peculiar to that particular property. Moreover, it is specifically stated in the written agreement, which was signed by all interested parties, that "they and/or their counsel have fully investigated said trust and all matters related to the conduct thereof by the Bank and its predecessors, and that the foregoing release is made after full investigation and with full knowledge on the part of them and each of them of all their claims against the persons and corporations above mentioned and each of them."

The first alleged erroneous order of the court, of which the appellant complains, occurred when plaintiff objected to the introduction or to the marking for identification of a report by Alexander W. Dodge on the timber land in Tehama County, which report was received by Mr. Resleure from the bank after a letter, dated March 25, 1937, was sent to the defendants demanding payment of interest on the obligation in question. The attorney for defendants stated to

the court that the report indicated there was no transportation problem incident to the land. The court sustained the objection to evidence of the report on the ground that it was hearsay. Clearly the report consisted of the hearsay statements of Mr. Dodge. It was therefore incompetent. If Dodge knew there was a transportation problem in connection with the land, and the defendants wished to prove that fact, the plaintiff was entitled to have him called as a witness so they might have the opportunity of cross-examining him in that regard. The court properly excluded the report as hearsay. There was no error in refusing to mark the report for identification since it does not appear to have been competent evidence in this case for any purpose whatever.

■ Finally, the appellant contends that the plaintiff is estopped from foreclosing the liens by an oral agreement to refrain from doing so while the defendants were attempting in good faith to sell the property, provided they paid the taxes and fire protection assessments in the meantime. It is asserted the defendants consented to the rendering of the previous judgment only because they relied on plaintiff's fulfillment of that oral agreement. The court specifically found that no such agreement to forbear instituting foreclosure proceedings was made, and that the defendants did not consent to the judgment in reliance upon such an agreement. The last-mentioned findings are amply supported by the evidence and this court is absolutely bound by the determination of the trial court in that regard. (*Black* v. *Black,* 203 Cal. 173 [263 Pac. 234] ; 2 Cal. Jur. 921, sec. 543.)

■ Three witnesses testified on behalf of the defendant that the preceding alleged oral agreement was made December 9, 1935, by and in the presence of Mr. Grigsby, vice-president of the Security First National Bank, Walter L. Nossaman, attorney for that bank, and W. H. Meservey, president of the plaintiff, Assets Corporation. In rebuttal of defendants' evidence in that regard, each of the three men last mentioned took the witness stand and positively denied that any such agreement was ever made by them or in their presence. Such an oral agreement would be inconsistent with the terms of the previous written agreement and with the terms of the judgment which was subsequently rendered by consent of the defendants after full investigation and knowledge of the surrounding circumstances and conditions. It is contrary to the well-established presumption of law that all the material

previous oral negotiations regarding the terms and conditions of a contract which is subsequently reduced to writing and signed by the respective parties are included therein.

September 21, 1936, nine months after the alleged oral agreement was asserted to have occurred, the defendant corporation signed a written agreement by its president, J. F. Resleure, and its secretary, with the plaintiff and all interested parties, for the purpose of correcting certain alleged errors which occurred in the descriptions of some of the timber lands involved in the former judgment. In that subsequent written contract, the alleged oral agreement to forego foreclosure proceedings was not mentioned. But the agreement does recite the entry of the consent judgment by which it declares there ''was established a lien upon the real property therein described, to secure an indebtedness due and owing to first party herein (Assets Corporation) in the principal sum of $350,000.00, with interest at the rate of 5% per annum from August 1, 1934, until the principal shall have been paid, and providing that said second party herein (Security First National Bank of Los Angeles) shall convey to third party herein (Perrin Properties, Incorporated) the real property in said judgment described, subject to the said lien securing said $350,000.00 indebtedness.''

The alleged oral agreement, if made, would effectively nullify the important provision of the former written agreement creating the liens by contract of the parties. Liens upon real property may be created by contract of the parties. (Sec. 2881, Civil Code.) Such an oral agreement would also nullify the terms of the subsequent judgment which by consent of all parties reestablished those liens. Moreover, the alleged oral agreement to forego foreclosure proceedings, since it affected an interest in real property and was not to be performed within a year from the asserted making thereof would violate the express terms of the statute of frauds. (Sec. 1973, subd. 1, Code Civ. Proc.) The plaintiff is not estopped from denying the alleged oral agreement to refrain from foreclosing the liens. They have not yet received any benefits from the written agreement. If defendants' contention regarding the oral agreement were found to be true, the plaintiff would be likely to be deprived of all benefits which might flow from that written agreement and

from the judgment determining the amount of the indebtedness and establishing the lien to secure its payment.

It is sufficient to hold that we may not interfere with the findings and judgment with respect to the alleged oral agreement, for the reason that there is a conflict of evidence on that subject, and there is an abundance of testimony to support the findings of the court.

The judgment is affirmed.

Tuttle, J., concurred.

A petition for a rehearing was denied December 31, 1941.