[L. A. No. 22352. In Bank. Sept. 25, 1953.]

CAROL DIETRICH, Respondent, v. NOAH DIETRICH,
Appellant.

Wright, Wright, Green & Wright, Loyd Wright and Charles A. Loring for Appellant.

Jennings & Belcher and Frank B. Belcher for Respondent.

SCHAUER, J.—Plaintiff Carol Dietrich brought an action for separate maintenance against her alleged husband, Noah Dietrich. Noah answered, admitting a "purported marriage ceremony" but claiming that there was no valid marriage because at the time of the ceremony Carol was the wife of another man; i. e., was not validly divorced from a previous husband. Noah also cross-complained, seeking an annulment, or, in the alternative, a divorce. Carol obtained an order to show cause and, after hearing, the trial court ordered, among other things, that Noah pay $10,000 on account of her attor-

neys' fees, $2,750 monthly for her support pendente lite, and certain property taxes and insurance premiums. Noah appeals from those portions of the order. He does not attack an award of $750 monthly for the support of the three minor children of himself and Carol.

Noah contends that (1) the trial court erred to his prejudice in rejecting offered proof intended to show that his marriage to Carol was invalid because her previous divorce was invalid; (2) if it is assumed that it had jurisdiction to award temporary support, the trial court erred in fixing the amount of such award. We have concluded that these contentions are without merit.

The parties went through a California marriage ceremony on May 23, 1936, one day after the entry in Nevada of a decree which recited that Carol was granted a divorce from Harold Moore. At the hearing on the order to show cause in the present California divorce proceeding Noah made the following offer of proof to show that at the time of the California marriage ceremony Carol was not legally divorced from Moore. Carol accepted Noah's proposal of marriage in September, 1935, while she was still married to Moore. She knew that Noah was a legal resident of Texas and she planned that after she divorced Moore and married Noah she would leave California and make her home in Texas. On April 4, 1936, Carol and Moore were both legal residents of California. On that day she went to Nevada for the sole purpose of simulating a residence and obtaining a divorce. During the period between April 4, 1936, and May 22, 1936, she frequently wrote to Noah; her letters, among other things, referred to her intention to make Texas her permanent home after their marriage, described her stay in Nevada as a "sojourn," referred to the obtaining of a divorce as "the purpose of my trip," and discussed Noah's arrangements for their contemplated honeymoon voyage. During this same period Carol made several overnight visits to Los Angeles, and on one trip remained in Los Angeles for more than 24 hours, despite the fact that before she left California for Nevada she had written Noah that "As I understand the Nevada requirements, I couldn't possibly return here for even a day after establishing my residence there. . . . It wouldn't do to run any risk of later having it declared invalid." In obtaining the Nevada decree Carol used a power of attorney from Moore; Moore was never present in Nevada during the period from April 4 to May 22, 1936; and Carol paid all the expenses of the Nevada action.

Noah also offered to prove that he "learned for the first time that there was some question regarding the legality of the Nevada divorce . . . in November, 1951" (Carol instituted this action November 13, 1951); however, there is no question that Noah knew of the above described circumstances under which Carol obtained the Nevada decree.

The only portion of the offered proof which the trial court admitted in evidence was an exemplified copy of the judgment roll of the Nevada action. This copy shows that Moore, by Nevada counsel, appeared and answered, denying Carol's allegation that she was a bona fide resident of Nevada, and that the Nevada court found that such allegation was true. The trial court in the present proceeding rejected the balance of the offered proof upon three stated grounds: (1) Noah's conduct in connection with Carol's obtaining the Nevada decree estops him from attacking it. (2) Noah cannot attack the Nevada decree because he is not a party to or interested in it. (3) Noah is precluded from attacking the decree by the full faith and credit clause (U. S. Const., art. IV, § 1).

Carol urges that the evidence was properly excluded for the reasons stated by the trial court and also urges that, regardless of the correctness of those stated grounds, once a ceremonial marriage is established then "in any and all events under those circumstances she is entitled to alimony pendente lite."

It may be stated as a general rule that ordinarily if a ceremonial marriage is shown, and if the ceremony is followed by the assumption of marital relations, no further proof of the fact of marriage need be made in preliminary proceedings in order to sustain an award of temporary alimony, court costs and attorneys' fees, and an extended inquiry into close questions as to the validity of the marriage will not be, and need not be, allowed in such preliminary proceedings. Fundamentally, as declared in *Colbert* v. *Colbert* (1946), 28 Cal.2d 276, 279 [169 P.2d 839], "The existence of the marriage is a jurisdictional prerequisite for the right of the court to order support, costs, and counsel fees pendente lite in an action for divorce or separate maintenance. [Citations.] And the invalidity of the marriage, as is true of any jurisdictional prerequisite, may be shown at any time." And as pointed out in *Carbone* v. *Superior Court* (1941), 18 Cal.2d 768, 771-772 [117 P.2d 872, 136 A.L.R. 1260], "Even though the defendant in an action for divorce denies the existence of the marriage, the court may nevertheless make the order if

defendant is given an opportunity to be heard and the marriage is proved by a preponderance of the evidence. . . .
 Although such an order implies a finding of the existence of the relationship, the proceeding need not be so complete nor the evidence so extensive as upon the trial of the issues of the case and the order therefore does not determine those issues nor affect the final judgment. [Citations.]''

 The above stated general rule does not mean, however, that the mere showing that the words of a marriage ceremony have been said, absolutely and in all events precludes a defendant on an order to show cause from being heard in challenge of the fact of marriage. Absurd results could follow if we accepted Carol's broad contention that in no event, on the hearing of an application for temporary alimony and suit money, can evidence tending to show the invalidity of an admitted ceremonial marriage be received; for example, a spouse could be required to pay temporary alimony even though he or she could show—and offered to show conclusively —that in the very same court the marriage now relied on had been previously annulled at the instance of the other spouse by a judgment which had become final and that such spouse had remarried. To absolutely exclude such evidence simply because of the fact that the parties had once participated in a ceremony of marriage would deny verity to the substance of the rule, as stated in the Carbone case, that ''Even though the defendant in an action for divorce denies the existence of the marriage, the court *may* nevertheless make the order *if defendant is given an opportunity to be heard and the marriage* is proved by a preponderance of the evidence.'' (Italics added.) An opportunity ''to be heard'' means an opportunity to contest. To give full effect to the rule for which Carol contends would mean that the opportunity of an adverse party to be heard would be satisfied and concluded if he or she were permitted to be present when the one seeking temporary alimony produced an authenticated copy of a recorded certificate of marriage of the parties. Since, as stated in the Carbone case, *supra* (at p. 772 of 18 Cal.2d), the adverse party, in response to an application for temporary support in a paternity or divorce action, ''must be given an opportunity to be heard and to present his evidence . . . [although] [t]he resulting judgment is temporary in effect,'' it appears that in any given situation it must depend on the facts of the case whether evidence relating to the fact of marriage, and, in particular, evidence tending to show that a ceremonial

marriage in fact amounted to no more than a marriage ceremony (i. e., was a mock marriage or, for any conclusive and readily provable reason was wholly void or had already been annulled or dissolved) may be properly excluded.

In *Bancroft* v. *Bancroft* (1935), 9 Cal.App.2d 464, 468 [50 P.2d 465], the District Court of Appeal quoted with approval from *Brinkley* v. *Brinkley* (1872), 50 N.Y. 184, 193 [10 Am.Rep. 460], as follows: " 'And the principle at the bottom is this: Where, marriage in fact being denied, the affirmative is upon the party claiming to be the wife[1] to show that an actual marital relation ever existed, there alimony will be denied until that fact is proven to the satisfaction of the court, or is admitted; for it is upon the existence of that relation alone that the right to alimony depends. Where an actual marital relation has been admitted or shown, and its existence in law is sought to be avoided by some fact set up by the husband, and it devolves upon him to show that fact, there alimony will be granted until that fact is shown; for the relation actually exists upon which the right to alimony depends, and the object of the litigation is to annul that actual relation by showing some other fact, the existence of which is denied. It may be said, too, that for the purposes of an application for temporary alimony there will not be need that the fact of marriage be so conclusively established as for the purpose of permanent alimony, or any other ultimate purpose of the action. It is for the interest of society and in aid of public policy that, where the married relation has been in fact assumed . . . and where it is averred by the putative wife and denied by the alleged husband, if she makes a reasonable plain case of its existence, she should be furnished with means of temporary support and of conducting the suit until the truth or falsehood of her allegations can be ascertained by the proofs formally taken in the case.' " (See, also, 35 Am.Jur. 226, 227, § 70.)

Applying the above stated principles, which we adopt, to the present case, since it appears that there was a ceremony of marriage coupled with an actual and bona fide assumption of marital relations, and considering the character of the attack on the validity of the marriage, it is obvious that the exclusionary ruling was proper and may be sustained at this stage of the proceedings on this ground alone.

---

[1]In California, since the rights and obligations of husband and wife are mutual and reciprocal (Civ. Code, § 137), the principles stated apply interchangeably to either husband or wife as the case may be.

There is, however, another and more fundamental ground which not only is controlling at this stage of the proceedings but presumptively will be controlling on the trial as well. On this record it is immediately obvious that the very evidence offered to show the invalidity of the ceremonial marriage was properly excluded because that same evidence shows that Noah is estopped to assert the claimed invalidity of the Nevada divorce. With full knowledge of the circumstances under which that divorce was obtained, and in reliance on such divorce, Noah went through a marriage ceremony and lived with Carol as her husband for many years. The public policy of this state, in the circumstances of this case, as in those considered in *Rediker* v. *Rediker* (1950), 35 Cal.2d 796, 808 [221 P.2d 1, 20 A.L.R.2d 1152], requires recognition of the second marriage rather than the "dubious attempt to resurrect the original" marriage. (See, also, *Watson* v. *Watson* (1952), 39 Cal.2d 305, 307 [246 P.2d 19].)

 Noah urges that the public policy applicable here is stated in section 150.1 of the Civil Code, which provides that "A divorce obtained in another jurisdiction shall be of no force or effect in this State, if both parties to the marriage were domiciled in this State at the time the proceeding for the divorce was commenced." But we are not considering the "force or effect" of the Nevada decree except as such consideration is necessarily incident to the olding that Noah, because of his conduct with relation to that decree, has no standing to question it.

Since we have determined that Noah's offer of proof shows that he is estopped to question the Nevada decree, it is unnecessary, either in respect to the order directly concerned or for the guidance of the court at the trial on the merits, to pass upon the correctness of the other stated grounds of the trial court's exclusionary ruling.

Noah claims that the amount awarded for support is excessive, beyond his ability to pay, and does not take into account Carol's separate income. The total annual amount which Noah is required to pay for support of Carol and the children (including insurance and county taxes on the home where Carol and the children live) is $49,030.61. According to the wife's questionnaire, necessary expenses of herself and the children are $5,028.85 monthly and her separate income is $1,100 monthly. There is evidence that these figures are substantially correct. Noah's net income for 1950, after pay-

ment of income taxes, was $197,139.32; the expense of maintaining the family, with Noah living in the family home (from which he has since moved), was $85,567.76. An increase of about $20,000 in taxes for the year 1951 was expected. According to the husband's questionnaire, his necessary annual expenses total $14,820.

If the above figures are accepted it appears that Noah would have the ability to pay the amount awarded. His contention that he did not have such ability is based in part upon a view of his estimated income less favorable than that accepted by the trial court and in part upon considering the award of attorney fees as if it were part of the support award.

Noah is correct in his statement of the proposition that a wife is not entitled to temporary alimony when she has independent income sufficient to enable her to support herself. (*Loeb* v. *Loeb* (1948), 84 Cal.App.2d 141, 146 [190 P.2d 246]; *Spreckels* v. *Spreckels* (1952), 111 Cal.App.2d 529, 533 [244 P.2d 917].) But he does not show that the trial court ignored this rule. The monthly amount of the award for support is approximately $4,087. As stated above, Carol offered evidence that the amount required was approximately $5,028.85. Thus the total amount available to her, with her own separate income of $1,100, is approximately the amount which she requested and testified that she required. From this we may assume that the trial court took into account her separate income when it fixed the amount of the award.

Noah complains that the award of $10,000 on account of Carol's attorneys' fees was excessive. The situation is similar to that in *Pope* v. *Pope* (1951), 107 Cal.App.2d 537, 539 [237 P.2d 312]: "In determining the amount of a reasonable fee the trial court is permitted to consider various factors: The nature of the litigation, its complexity, the nature and extent of the contest, the amount involved, the financial circumstances of the parties, the skill required, the professional standing and reputation of the husband's attorneys and of the attorneys selected by the wife, are some of the relevant matters to be considered. [Citations.]"

Here the litigation is complicated and vigorously contested; the amounts involved are considerable (according to the wife's questionnaire the net worth of community property exceeds $2,500,000; according to the husband's questionnaire his net worth is $1,014,626); and the standing and ability of counsel are high.

For the reasons above stated the order appealed from is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., and Spence, J., concurred.

Edmonds, J., concurred in the judgment.

CARTER, J., Concurring and Dissenting.—I concur in the conclusion reached, but dissent from that part of the opinion which holds that the defendant may not, *on the trial of the case,* offer proof of the invalidity of the plaintiff's divorce from her first husband.

The existence of an estoppel is a question of fact (10 Cal. Jur., 656; *Gump* v. *Gump,* 42 Cal.App.2d 64 [108 P.2d 21]; *Assets Corp.* v. *Perrin Properties, Inc.,* 48 Cal.App.2d 220 [119 P.2d 375]; *Judelson* v. *American Metal Bearing Co.,* 89 Cal.App.2d 256 [200 P.2d 836]), and the burden of proof is on the party asserting the doctrine (*Garrett* v. *Cook,* 89 Cal.App.2d 98 [200 P.2d 21]).

The vital principle of equitable estoppel is that he who by his language or conduct leads another to do *what he would not otherwise have done* shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Four things are essential to the application of the doctrine: (1) *The party to be estopped must be apprised of the facts;* (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) *the other party must be ignorant of the true state of facts;* (4) the other party must rely upon the conduct to his injury. Defendant's offer of proof showed that plaintiff went to Nevada for the sole purpose of obtaining a decree of divorce; that she did not remain in that state continuously for the six weeks' period of residence which is the jurisdictional prerequisite demanded by that forum; that defendant did not know, prior to November, 1951, of the invalidity of the Nevada judgment of divorce awarded to plaintiff from her first husband; that there is no evidence that defendant aided, assisted, or counseled plaintiff to procure a decree of divorce in Nevada. An objection was sustained by the trial court to this offer of proof. Plaintiff offered no evidence controverting defendant's allegations. It would appear to me that on the record here the first element of an estoppel is missing—that the party to be estopped must

be apprised of the facts—in that defendant did not know of the invalidity of the Nevada divorce; the second element is present—defendant married plaintiff intending that his conduct be acted upon; the third element is missing—plaintiff was not ignorant of the true state of facts; the fourth element is probably present—plaintiff relied upon the marriage to defendant although the element of injury is problematical. Upon the trial, if defendant is permitted to litigate the question, plaintiff will also be permitted to introduce evidence which may have the effect of supplying the missing elements.

In previous cases where one spouse has been held estopped from denying the validity of a previous divorce, additional elements have been present. The estopped spouse has aided, abetted, counseled, or actively participated by paying the expenses, etc. in the procurement of the fraudulent divorce. In *Rediker* v. *Rediker*, 35 Cal.2d 796, 806 [221 P.2d 1, 20 A.L.R.2d 1152], we said "The doctrine of estoppel has also been held applicable to cases in which a husband sought to assert the invalidity of his or his wife's earlier divorce from another as a defense to her action for divorce and alimony." Cited as authority are *Margulies* v. *Margulies*, 109 N.J.Eq. 391, 392 [157 A. 676] and *Van Slyke* v. *Van Slyke*, 186 Mich. 324, 330 [152 N.W. 921]. Both of these cases held estopped a spouse who had *actively* participated in the procurement of a fraudulent divorce which he later sought to have declared invalid. I feel, therefore, that under the facts as here presented, this court should not preclude defendant from offering proof at the trial of the invalidity of plaintiff's Nevada decree of divorce.

While I feel that in view of the services rendered, the amount awarded is excessive, I do not feel that I should say that the award of attorneys' fees in this case is an abuse of discretion.

A ceremonial marriage between plaintiff and defendant having been established the court could properly exercise its discretion in making a preliminary award of alimony pendente lite, attorneys' fees and costs without hearing evidence as to the invalidity of the marriage, reserving to the trial on its merits the consideration of such evidence.

I, therefore, concur in the affirmance of the award.

Appellant's petition for a rehearing was denied October 22, 1953. Carter, J., was of the opinion that the petition should be granted.