Lester C. NORRIS, Appellant,

v.

Pauline N. NORRIS, Appellee.

No. 18334.

United States Court of Appeals
Ninth Circuit.

Nov. 19, 1963.

Haskell H. Grodberg, Los Angeles, Cal., and Paul J. Henry, Fontana, Cal., for appellant.

Rager & Olio, Fontana, Cal., for appellee.

Before JERTBERG and KOELSCH, Circuit Judges, and BOWEN, District Judge.

KOELSCH, Circuit Judge.

This is an appeal from an order of the United States District Court, affirming an order of the Referee in Bankruptcy denying the petition of Lester C. Norris for an order enjoining Pauline N. Norris from causing a levy to be made against his property pursuant to a writ of execution issued out of the Superior Court of the State of California, in and for San Bernardino County. Jurisdiction of the District Court was granted by 28 U.S. C.A. § 1331 and 11 U.S.C.A. § 11, sub. a(15) [see Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)]; this court has jurisdiction of the appeal by virtue of 28 U.S.C.A. §§ 1291 and 1294.

Briefly it appears that in June, 1957 Pauline N. Norris, the appellee herein, filed an action in the said Superior Court for separate maintenance from the appellant, Lester C. Norris.[1] In her verified complaint she alleged the marriage of the parties, and other facts essential to such an action. She also sought temporary alimony and suit money. Following the hearing on an order to show cause, issued in that connection, the court ordered Lester to pay her $35.00 a week for support "beginning June 29, 1957 [and] until further order of the court." After this order was made, Pauline did not press her suit but in 1958 she did cause a citation for contempt to be served on Lester, in an effort to enforce payment of a number of delinquent installments. However, prior to the time fixed for the hearing, Lester agreed to pay Pauline $3,000 at the rate of $35.00 a week, and a further sum for attorneys fees, and she agreed to have the hearing continued so long as the payments were made. The litigation then lay dormant until June, 1959, when Lester filed a cross-complaint seeking an

1. Section 137 of the California Civil Code provides in part: "When the husband or wife has any cause of action for divorce as provided in this code, or the husband or wife wilfully deserts the wife or husband, or when the husband or wife wilfully fails to provide for the wife or husband, he or she, as the case may be, may, without applying for a divorce, maintain in the superior court an action against her or him, as the case may be, for the permanent support and maintenance of herself or himself * * *. Such action shall be known as an action for separate maintenance."

annulment of the "purported marriage" on the ground that at the time of the marriage he had a former wife living whose marriage to him was then in force;[2] in the alternative, he sought a divorce charging Pauline with extreme cruelty. Pauline immediately filed an answer, the case was tried on the cross-complaint and, on September 10, 1959, judgment was entered annulling the marriage. The formal judgment contained the recital "that the marriage between the parties hereto is null and void and of no force and effect whatsoever"; it further stated and provided "that pursuant to the terms of the Property Settlement Agreement heretofore entered into between the parties of this action, the defendant and cross-complainant pay to the plaintiff and cross-defendant, as and for a complete settlement of their respective property rights, the sum of $2,408.00, payable at the rate of $35.00 per week."

During September, 1960 Lester filed his voluntary petition in bankruptcy, and was duly adjudged a bankrupt. He listed in his schedules as an unsecured debt the balance of the sum then owing to Pauline. An order of discharge was entered on January 16, 1961, and thereafter Pauline sought to have Lester's property levied upon, as above stated.

Although there was considerable controversy whether the debt reflected in the judgment of the Superior Court had its origin in the court's order for support or represented a monetary allowance to effect a fair division of property and property rights, on this appeal we have adopted Pauline's contention that the debt was one for her support and that it was comprised of installments called for in the order which had accrued and were unpaid at the time the judgment was rendered.

Thus the question presented is whether or not Pauline's claim was within the provision of Section 17, sub. a(2) of the Bankruptcy Act [11 U.S.C.A. § 35, sub. a(2)] which excepts from discharge in bankruptcy a debt " * * * for alimony due * * * or for maintenance or support of wife * * *."

■ It is well settled that "[a]limony does not arise from any business transaction, but from the relation of marriage. It is not founded on contract, express or implied, but on the natural and legal duty of the husband to support the wife," [Audubon v. Shufeldt, 181 U.S. 575, 577, 21 S.Ct. 735, 736, 45 L.Ed. 1009 (1901)] and it is the obligation based on this duty which is saved from discharge in bankruptcy by Section 17, sub. a(2) of the Act. Wetmore v. Markoe, 196 U.S. 68, 76, 25 S.Ct. 172, 49 L.Ed. 390 (1904).

The general rule, declared in Section 61 of the Civil Code of California, is that: "[a] subsequent marriage contracted by any person during the life of a former husband or wife of such person with any person other than such former husband or wife, is illegal and void from the beginning." That Section does contain a further provision, commonly referred to as an "Enoch Arden Law" because of the situations wherein it operates. This provision reads that where " * * * such former husband or wife is absent, and not known to such person to be living for the space of five successive years immediately preceding such subsequent marriage, or is generally reputed or believed by such person to be dead at the time such subsequent marriage was contracted" then " * * * the subsequent marriage is valid until its nullity is adjudged by a competent tribunal." [3]

The Supreme Court of California has emphasized that, "In a case arising under

---

2. Section 82 of the Civil Code of California, so far as pertinent reads:
   "A marriage may be annulled for any of the following causes, existing at the time of the marriage:
   "One—
   * * *
   "Two—That the former husband or wife of either party was living, and the

marriage with such former husband or wife was then in force."

3. The complete text of Section 61 is as follows:
   "A subsequent marriage contracted by any person during the life of a former husband or wife of such person, with any person other than such former husband

this provision, a case involving the question whether the second marriage is valid notwithstanding the former husband or wife is alive and the former marriage has not been dissolved or annulled, of course the element of good faith and belief of the party that the former husband or wife is dead is an essential element, for the statute expressly so makes it." Wilcox v. Wilcox, 171 Cal. 770, 155 P. 95, 98 (1916). See also, Goff v. Goff, 52 Cal.App.2d 23, 125 P.2d 848 (1942). And the same court has decided that for some purposes the provision will operate to make valid a plural marriage. In re Estate of Harrington, 140 Cal. 244, 73 P. 1000 (1903).[4]

But this provision constitutes an exception and, in order to avoid the ordinary incidents of such a marriage, a party must affirmatively allege and establish the essential element of good faith. In the annulment suit, neither Lester nor Pauline raised that issue, and the language of the judgment that "the marriage between the parties hereto is null and void and of no force and effect whatsoever" is hardly a judicial declaration of the interim validity of the marriage.

■ Nor does the fact (previously noted and assumed) that the installments were pursuant to the court's order for support, and that they had accrued before the marriage was declared null, serve to avoid the discharge of the debt.

■ The existence of a marriage is a jurisdictional prerequisite to the right of a court to order temporary alimony in a suit for separate maintenance or divorce. Dietrich v. Dietrich, 41 Cal.2d 497, 261 P.2d 269 (1953); Reeves v. Reeves, 34 Cal.2d 355, 209 P.2d 937 (1949). But nevertheless the order for support that the Superior Court made was well within that court's jurisdiction, for it was incidental to Pauline's suit for separate maintenance, and at that stage of the proceeding Lester had not attacked the validity of the marriage. Dietrich v. Dietrich, supra. But "Although such an order implies a finding of the existence of the relationship" of husband and wife [Carbone v. Superior Court, 18 Cal. 2d 768, 117 P.2d 872, 874, 136 A.L.R. 1260 (1941)] that finding was merely a temporary one [Dietrich v. Dietrich, supra] and was superseded by the judgment which finally and conclusively adjudged that there was never any marriage.

The order appealed from is reversed and the matter is remanded to the District Court, with directions to issue an injunction restraining Pauline from attempting to enforce the said judgment.

or wife, is illegal and void from the beginning, unless:

"1. The former marriage has been annulled or dissolved. In no case can a marriage of either of the parties during the life of the other, be valid in this state, if contracted within one year after the entry of an interlocutory decree in a proceeding for divorce.

"2. Unless such former husband or wife is absent, and not known to such person to be living for the space of five successive years immediately preceding such subsequent marriage, or is generally reputed or believed by such person to be dead at the time such subsequent marriage was contracted. In either of which cases the subsequent marriage is valid until its nullity is adjudged by a competent tribunal."

4. The facts set out in the opinion in Harrington show that Harrington left his wife in Michigan and settled in California. After a period of about ten years during which she did not hear from him, and believing him to be dead as indeed he was reputed to be, the wife remarried in good faith one Carley, no divorce from Harrington having been procured. Harrington did not remarry. Upon the latter's death in California she sought to administer his estate under the claim that she was his widow. The Supreme Court of California held that she was not the widow of Harrington, but the wife of Carley, the marriage to him coming within the provision of Section 61, which makes the marriage valid until declared null by a court of competent jurisdiction.